**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ALONZO SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No.   16 c 3404** |
| | ) | |
| **vs.** | ) | |
| | ) | **Judge Amy St. Eve** |
| **JON BURGE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**PLAINTIFF ALONZO SMITH'S RESPONSE TO COOK COUNTY DEFENDANTS'
MOTION TO DISMISS HIS COMPLAINT**</u>

Respectfully submitted,

Joey L. Mogul
Ben H. Elson, G. Flint Taylor, Jr.
People's Law Office
1180 N. Milwaukee Avenue
Chicago, IL 60642
(773) 235-0070

Attorneys for Plaintiff Alonzo Smith

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT……………………………………….…....…….1

FACTS…………………………………………………………………....…1

ARGUMENT ...........................................................................................................3

I.  DEFENDANT KELLY ACTED IN AN INVESTIGATIVE CAPACITY AND IS THEREFORE NOT ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY 3

   A.  Kelly Is Not Entitled to Absolute Prosecutorial Immunity on Plaintiff's Federal Claims……………………………………………………… 3

   B.  Kelly Is Not Entitled to Absolute Prosecutorial Immunity on Smith's State Law Claims ................................................................................. 10

II. KELLY IS NOT ENTITLED TO QUALIFIED IMMUNITY ......................... 10

   A.  Smith's Rights to a Fair Trial and to Be Free From a Coerced Confession Were Clearly Established in 1983………………………………..10

   B.  Kelly Is Liable for Failing to Intervene in Smith's Coercive Interrogation and the Fabrication of His False Confession. ............................................. 12

III. SMITH'S CLAIMS IN COUNTS II AND VI ARE TIMELY ....................... 14

IV. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER SMITH'S STATE LAW CLAIMS………………………………………………..16

V.  COOK COUNTY IS A NECESSARY PARTY FOR PURPOSES OF INDEMNIFICATION UNDER 745 ILCS § 10/9-102 ...................................... 16

CONCLUSION…………………………………………………………17

## TABLE OF POINTS AND AUTHORITIES

**Cases**

*Aboufariss v. City of De Kalb*, 305 Ill. App. 3d 1054 (2d Dist. 1999) ......................................... 10

*Alvarado v. Litscher*, 267 F.3d 648 (7th Cir. 2001) ...................................................................... 3

*Andrews v. Burge*, 660 F.Supp.2d 868 (N.D. Ill. 2009) ............................................................... 14

*Barbera v. Smith*, 836 F.2d 96 (2d Cir. 1987) .............................................................................. 6

*Blancas v. Village of Rosemont*, 2008 U.S. Dist. LEXIS 88380 (N.D. Ill. 2008) ....................... 17

*Brady v. Maryland*, 373 U.S. 83 (1963) ....................................................................................... 10

*Brown v. Mississippi*, 297 U.S. 278 (1936) .................................................................................. 11

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ..................................................................... 4, 5, 6

*Burns v. Reed*, 500 U.S. 478 (1991) ................................................................................. 4, 10, 11

*Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972) ................................................................................ 12

*Cannon v. Burge*, 2006 WL 273544 (N.D. Ill. Feb. 2, 2006) ...................................................... 16

*Carver v. Lasalle County*, 203 Ill. 2d 497 (2003) ....................................................................... 17

*Carver v. LaSalle County*, 324 F.3d 947 (7th Cir. 2003) ............................................................ 17

*Chatman v. City of Chicago*, No. 14 C 2945, 2015 U.S. Dist. LEXIS 28707 (N.D. Ill. Mar. 10, 2015) ......................................................................................................................................... 13

*Cook v. Weber*, 698 F.2d 907 (7th Cir. 1983) ............................................................................. 10

*Currie v. Lao*, 148 Ill.2d 151 (1992) ............................................................................................ 15

*Durham v. Nu'Man*, 97 F.3d 862 (6th Cir. 1996) ........................................................................ 13

*Fields v. Wharrie*, 672 F.3d 505 (2012) ........................................................................................ 5

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) .................................................................. 5, 11

*French v. Corrigan*, 432 F.2d 1211 (7th Cir. 1970) ...................................................................... 9

*Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ............................................................. 11

*Griffin v. Meagher*, 2009 U.S. Dist. LEXIS 118598 (N.D. Ill. Dec. 21, 2009) ........................... 17

*Hampton v. Chicago*, 484 F.2d 602 (CA7 1973) ........................................................................... 4

*Harris v. City of Chi.*, 2015 U.S. Dist. LEXIS 122500, 12-13 (N.D. Ill. Sept. 15, 2015) ............. 8

*Healy v. Vaupel*, 133 Ill. 2d 295 (1990) ..................................................................................... 15

*Heck v. Humphrey*, 512 U.S. 477 (1994) ...................................................................................... 1

*Hill v. City of Chicago*, 2009 U.S. Dist. LEXIS 5951 (N.D. Ill. Jan. 26, 2009), *aff'd*, 627 F.3d 601 (7th Cir. 2010) ...................................................................................................................... 7

*Hill v. City of N.Y.*, 45 F.3d 653 (2d Cir. 1995) ............................................................................ 6

Hill v. Coppleson, 627 F.3d 601 (7th Cir. 2010) ............................................................................ 7

*Hobbs v. Capelutti*, 899 F. Supp. 2d 738 (N.D. 2012) ............................................................... 14

*Hoffman v. Yack*, 57 Ill.App.3d 744 (5th Dist. 1978) ................................................................. 15

*Horstman v. County of DuPage*, 284 F. Supp. 2d 1125 (N.D. Ill. 2003) ...................................... 3

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .................................................................................... 8

*Jackson v. Denno*, 378 U.S. 368 (1964) ..................................................................................... 11

*Jones v. City of Chi.*, 856 F.2d 985 (7th Cir. 1988) .................................................................... 11

*Kitchen v. Burge*, 2012 U.S. Dist. LEXIS 12059 (N.D. Ill. 2012) ................................................. 6

*Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992) ...................................................................... 6

*Lavalais v. Village of Melrose Park*, 734 F.3d 629 (7thCir. 2013) ............................................... 4

*Lewis v. Mills*, 677 F.3d 324 (7th Cir. 2012) ................................................................................ 5

*Malden v. City of Waukegan*, 2004 U.S. Dist. LEXIS 20843 (N.D. Ill. May 11, 2004) .............. 17

*McCall v. Devine*, 334 Ill. App. 3d 192 (1st Dist. 2002) .............................................................. 7

*Mooney v. Holohan*, 294 U.S. 103 (1935) ................................................................ 10

*Moore v. Valder*, 65 F.3d 189 (D.C. Cir. 1995) ........................................................ 6

*Napue v. Illinois*, 360 U.S. 264 (1959) .................................................................... 10

*National Cas. Co. v. McFatridge*, 604 F.3d 335 (7th Cir. 2010) ............................... 17

*Orange v. Burge*, 2008 U.S. Dist. LEXIS 75103 (N.D. Ill. 2008) ......................... 6, 16

*Patrick v. City of Chi.*, 2014 U.S. Dist. LEXIS 174325 (N.D. Ill. Dec. 17, 2014) ............... 11, 13

*Patterson v. Burge,* 328 F. Supp. 2d 878 (N.D. Ill. 2004) ...................................... 16

*People v. Patrick J. Gorman Consultants, Inc.*, 111 Ill. App. 3d 729 (1st Dist. 1982) ............... 10

*Prince v. Hicks*, 198 F.3d 607 (6th Cir. 1999) ......................................................... 6

*Pyle v. Kansas*, 317 U.S. 213 (1942) ...................................................................... 10

*Rex v. Teeples*, 753 F.2d 840 (10thCir. 1985) ........................................................ 6

*Rivera v. Lake County*, 974 F. Supp.2d 1179 (N.D. Ill. 2013) ............................... 7, 13

*Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003) ........................................ 16, 17

*Santiago v. Walls*, 599 F.3d 749 (7th Cir. 2010) ..................................................... 3

*Saunders v. City of Chi.*, 2013 U.S. Dist. LEXIS 161842 (N.D. Ill. Nov. 13, 2013) ......... 7, 13, 14

*Senn Park Nursing Center v. Miller,* 104 Ill.2d 169 (1984) ................................... 15

*Spiegel v. Rabinovitz*, 121 F.3d 251 (7th Cir. 1997) ............................................... 9

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010) ....................................... 3

*Thomas v. Riddle*, 673 F. Supp. 262 (N.D. Ill. 1987) ............................................. 7

*Tillman v. Burge*, 813 F.Supp.2d 946 (N.D. Ill. 2011) .......................................... 6, 15

*Turpin v. Koropchak*, 567 F.3d 880 (7th Cir. 2009) ............................................. 15

*U.S. v. Bagley*, 473 U.S. 667 (1985) ...................................................................... 10

*Welch v. Illinois Supreme Court*, 322 Ill.App.3d 345 (3d Dist. 2001) ................... 15

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) .................................. *passim*

*Wilkinson v. Ellis*, 484 F. Supp. 1072 (E.D. Pa. 1980) ....................................... 7, 13

*Williams v. Valtierra*, 2001 U.S. Dist. LEXIS 8460 (N.D. Ill. June 18, 2001) ............... 7

*Wilson v. City of Chicago*, 120 F.3d 681 ............................................................. 11, 17

*Wilson v. City of Chicago*, 6 F.3d 1230 (7th Cir. 1993) ........................................ 11

*Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994) ......................................................... 12

*Ying Jing Gan v. City of N.Y.*, 996 F.2d 522 (2d Cir. 1993) ..................................... 6

*Zahray v. Coffey*, 221 F. 3d 342 (2d Cir. 2000) ...................................................... 6

**Statutes**

Section 1983 .............................................................................................................. 4

## SUMMARY OF ARGUMENT

Defendants Paul Kelly and Cook County ("County Defendants") contend in their Motion to Dismiss that the complaint against them should be dismissed because Kelly is purportedly entitled to absolute prosecutorial immunity. The County Defendants' motion must be denied because prosecutors are not entitled to absolute immunity for acts which fall *outside of* their prosecutorial function, and Smith's claims - - - that Kelly participated in the coercion of Smith and the fabrication of his false confession which led to his wrongful conviction - - - are based on such acts. The County Defendants' alternative claim that they are entitled to qualified immunity must likewise be rejected because Smith's constitutional claims are based on well-established law that defines the proper scope of interrogations. Finally, the County Defendants arguments that Smith's claims are untimely should similarly be rejected because they ignore both the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994) and the basic elements of the specified claims under Illinois law. For all of these reasons and as discussed further below, the County Defendants' motion to dismiss should be denied in its entirety.

## FACTS[1]

On January 21, 1983, Plaintiff Alonzo Smith voluntarily went to Area 2 Police Headquarters after he learned that Chicago Police Officers had been to his house looking for him to question him about James Fullilove's murder. Compl., ¶¶19-22. During the course of his interrogation at Area 2, Smith was tortured by Defendants Dignan and Byrne in the basement of the building. Dignan and Byrne repeatedly suffocated him with a plastic bag and beat him with a rubber black jack and night stick on numerous parts of his body in order to coerce Smith into

---

[1] The factual background is further set forth in detail on pages 2-5 of Smith's concurrently filed Opposition to the City of Chicago and Police Defendants' motion to dismiss, and is incorporated herein.

giving a false statement implicating himself in the murder of Fullilove. *Id.* at ¶¶22, 25-44, 48. Dignan and Byrne fabricated a statement, which they forced Smith to recite to them, and informed him that he would have to give this same statement to an Assistant State's Attorney (ASA). *Id.* at ¶45. They further threatened Smith that if he did not tell the ASA that they treated him well, they would bring him back to the basement. *Id.* at ¶¶45-46. Dignan then used a hose to wash the blood off Smith's shirt, jacket and mouth that came from an injury to his mouth, and brought Smith back upstairs to an interrogation room. *Id. at ¶47*

Later, Smith met with Defendant ASA Paul Kelly in the presence of Dignan and Byrne and recited what he was told to say in the basement. *Id. at ¶49*. Subsequently, when Smith was repeating the fabricated story in front of the court reporter, he forgot some of the details, and when he did so, Dignan handed notes to Kelly on cards that prompted Kelly to go over various parts of the story again, thereby revealing to Kelly that Plaintiff was giving a forced and fabricated confession. *Id.* at ¶50. Kelly obtained a signed, court-reported statement from Smith that became the crux of Smith's prosecution for murder. *Id.* at ¶¶51, 67.

During the course of the criminal proceedings, Smith filed a motion to suppress his confession. *Id.* at ¶56. At this motion hearing, Dignan, Byrne, and Kelly were called as witnesses by the trial prosecutors and Kelly falsely denied being aware of Smith's torture and abuse. *Id.* at ¶¶57, 59-60. At the conclusion of the evidence, the trial judge denied Smith's motion to suppress, accepting Dignan, Byrne and Kelly's false and perjured testimony denying Smith was tortured and abused. *Id.* at ¶63.

Byrne, Dignan and Kelly were also called by prosecuting attorneys to present testimony against Smith at his trial. *Id*. at ¶64. Prior to testifying at trial, Kelly did not inform, and deliberately withheld from the trial prosecutors, that he was aware that Smith had been

2

physically abused during his interrogation and that his confession was coerced and fabricated. *Id.* at ¶¶66, 69. Smith's coerced and fabricated confession was presented as the chief piece of incriminating evidence, without this piece of evidence (and Dignan and Byrne's suppression of exculpatory evidence), Smith would not have been prosecuted for, or convicted of, these crimes. *Id.*

After a full evidentiary hearing conducted pursuant to Smith's post-conviction petition, Circuit Court Judge Erica Reddick found that Smith had been tortured and physically abused to give a confession, vacated his conviction, and granted him a new trial. *Id.* at ¶116. On October 19, 2015, the prosecution dismissed all charges against Smith, thereby terminating the criminal proceedings in his favor. *Id.* at ¶117.

## STANDARD OF REVIEW

Smith adopts the standard of review set forth in his response to the City and Police Officer Defendants' motions to dismiss. *See also, Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). "Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate." *Horstman v. County of DuPage*, 284 F. Supp. 2d 1125, 1133 (N.D. Ill. 2003) (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001)).

## ARGUMENT

I.    **DEFENDANT KELLY ACTED IN AN INVESTIGATIVE CAPACITY AND IS THEREFORE NOT ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY**

   A. **Kelly Is Not Entitled to Absolute Prosecutorial Immunity on Plaintiff's Federal Claims.**

The County Defendants argue that Defendant Kelly is entitled to absolute prosecutorial

3

immunity because his conduct was confined to the initiation of the charges and the failure to disclose evidence in connection with Smith's criminal trial. This argument completely ignores the relevant factual allegations of Smith's complaint that clearly demonstrate that Kelly's conduct was investigative in nature. Specifically, Smith alleged that Kelly acted as an investigator when, _prior_ to his arrest and indictment for Fullilove's death, Kelly participated in his coercive interrogation, knowing he had been physically abused and that his confession was false. Construing the complaint and its implications liberally as this Court is required to do, it is readily apparent that Smith alleges that Kelly was aware that his confession was false and manufactured by Dignan and Byrne. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (all well-pleaded allegations must be presumed true, and all inferences must be read in light most favorable to plaintiff). Indeed, the pertinent allegations in Smith's complaint demonstrate that Kelly's actions fit squarely under the U.S. Supreme Court's definition of investigative acts.

In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the Supreme Court emphasized that the cloak of absolute prosecutorial immunity in Section 1983 cases is to be sparingly afforded, and it squarely placed the burden on the prosecutors to establish entitlement to such immunity. *Id.* at 269. The Court went on to hold that a prosecutor's manufacture or fabrication of evidence in the early stages of a case is investigative in nature, and does not entitle that prosecutor, who in those circumstances is acting like a police officer, to absolute prosecutorial immunity. *Id.* at 262-63. Relying on *Burns v. Reed*, 500 U.S. 478 (1991), the Court held:

> When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.' *Hampton v. Chicago*, 484 F.2d 602, 608 (CA7 1973). . . . When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is

also the same.

*Buckley,* 509 U.S. at 273, 276. The Seventh Circuit re-affirmed this holding in *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014) (*Fields II*), finding that when an ASAs' "duties go beyond the strictly prosecutorial to include investigation, and when they do non-prosecutorial work, they lose their absolute immunity". *See also Fields v. Wharrie*, 672 F.3d 505, 511 (7th Cit. 2012) (*Fields I*) (noting the difference between an advocate's role in citing and evaluating evidence, and a "'detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested....'" (*quoting Buckley,* 509 U.S. at 273)); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 579 (7th Cir. 2012) ("If [...] plaintiffs can prove that he [the prosecuting attorney] fabricated evidence before probable cause arose, then absolute immunity is off the table."); *Lewis v. Mills*, 677 F.3d 324 (7th Cir. 2012) ("a showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity, even if that target was later brought to trial.").

Smith's alleges that Kelly directly participated in his coercive interrogation when he, with the assistance of Dignan, took Smith's false court reported confession. During Kelly's course of questioning, it was apparent that Smith was unable to recite the confession and Kelly had to rely on Dignan and Dignan's notes to elicit the confession from Smith in front of the court reporter. Thus, Kelly actively facilitated Smith giving a false and coerced confession. It is also more than reasonable to infer from Smith's allegations that Kelly knew the confession was both false and coerced, given Smith's physical injuries.

The fabrication of a statement prior to the existence of probable cause to arrest and indict is clearly non immune investigative work. *See Fields II*, 740 F.3d at 1110-14 (a prosecutor's fabrication of a witness statement prior to plaintiff's arrest was investigative and not entitled to

5

absolute or qualified immunity)*; Whitlock*, 682 F.3d at 580-85 (same).[2] As the Supreme Court noted in *Buckley*, 509 U.S. at 274 "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Further, as this Court noted in *Hill v. City of Chicago*, No. 06 C 6772, 2009 U.S. Dist. LEXIS 5951, at *34-35 (N.D. Ill. Jan. 26, 2009), "a prosecutor involved in a conspiracy to target a criminal suspect is not protected by absolute immunity."

Likewise, engaging in coercive conduct to produce a statement from a suspect is quintessentially police investigative work, which unequivocally bars Kelly from any claim of absolute prosecutorial immunity. This has been repeatedly affirmed by Northern District Judges in other similar Burge related torture cases. *See Kitchen v. Burge*, 2012 U.S. Dist. LEXIS 12059 (N.D. Ill. 2012) (felony review prosecutor was not entitled to absolute immunity where plaintiff alleged he participated in obtaining tortured confession and then suppressed evidence about it); *Tillman v. Burge*, 813 F.Supp.2d 946, 967 (N.D. Ill. 2011) (felony review prosecutor was not entitled to absolute immunity where plaintiff alleged that he "personally participated in his interrogation"); *Orange v. Burge*, 2008 U.S. Dist. LEXIS 75103 (N.D. Ill. 2008) (where evidence indicated that a felony review prosecutor was present for plaintiff's coercive interrogation and participated in torture by prodding plaintiff to give statement in exchange for end of torture, prosecutor was not entitled to absolute immunity); as well as in a plethora of other applicable cases. *See also Rex v. Teeples*, 753 F.2d 840 (10th Cir. 1985) (prosecutor who participated in coercive and deceptive interrogation of suspect which resulted in suspect saying

---

[2] It is also well settled in other circuits that the fabrication of evidence by a prosecutors is investigative activity that is not immune. *See Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992); *Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995); *Hill v. City of N.Y.*, 45 F.3d 653 (2d Cir. 1995); *Zahray v. Coffey*, 221 F. 3d 342 (2d Cir. 2000); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522 (2d Cir. 1993); *Prince v. Hicks*, 198 F.3d 607 (6th Cir. 1999); *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987).

"what the police wanted him to say" acted as an investigator); *Rivera v. Lake County*, 974 F. Supp.2d 1179, 1191 (N.D. Ill. 2013) (prosecutors were not entitled to absolute immunity when the plaintiff alleged they failed to intervene to stop a coercive interrogation, thereby participating it); *Saunders v. City of Chi.*, 2013 U.S. Dist. LEXIS 161842, *37-38 (N.D. Ill. Nov. 13, 2013) (prosecutors were not entitled to absolute or qualified immunity where plaintiff alleged they coerced and fabricated his incriminating statement and those of witnesses); *Williams v. Valtierra*, 2001 U.S. Dist. LEXIS 8460 (N.D. Ill. June 18, 2001) (prosecutor who coerced arrestee to sign statement by threats of withholding medical care and prosecutor who prepared statement and was present for part of interrogation were not entitled to prosecutorial immunity); *Thomas v. Riddle*, 673 F. Supp. 262 (N.D. Ill. 1987) (denying motion to dismiss because allegation that prosecutor took part in a 12-hour marathon interrogation raised inference that his activity was investigative in nature); *Wilkinson v. Ellis*, 484 F. Supp. 1072 (E.D. Pa. 1980) (allegations of prosecutorial involvement in illegal police interrogation at police station are "quite clearly" investigative in nature); *McCall v. Devine*, 334 Ill. App. 3d 192, 204 (1st Dist. 2002) ("the Cook County State's Attorney maintains a felony review unit specifically for the purpose of fulfilling their investigative duties").

Additionally, where a prosecutor is alleged to have fed details about the crime to the suspect during the course of the suspect's interrogation, the prosecutor is not entitled to absolute immunity. *Hill v. City of Chicago*, 2009 U.S. Dist. LEXIS 5951, *34-35 (N.D. Ill. Jan. 26, 2009), *aff'd*, 627 F.3d 601 (7th Cir. 2010) (absolute immunity could not be granted on the basis of disputed facts). In *Hill*, the plaintiff alleged that the felony review state's attorney conspired with his interrogating officers and assisted in coercing his confession. Such actions were ruled to be "completely 'unrelated to the preparation and initiation of judicial proceedings.'"

7

Here, Kelly, like the prosecutors in *Buckley, Fields*, *Whitlock*, *Hill, Saunders*, *Tillman*, *Kitchen*, and *Orange* participated in Smith's coercive interrogation and, it is fair to infer, the fabrication of his false statements which led to his arrest and indictment for the Fullilove murder. In an attempt to circumvent this clearly applicable law, the County Defendants mischaracterize Smith's allegations in order to apply several cases which afford prosecutors immunity for advocacy, rather than investigative, conduct. For example, in *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), the Supreme Court, utilizing a functional analysis, limited the scope of prosecutorial immunity to conduct "intimately associated with the judicial process" and held that a prosecutor acting within the scope of his duties in initiating and pursuing a criminal prosecution was entitled to absolute prosecutorial immunity. *Imbler* does not protect prosecutors for conduct that has no functional tie to the judicial process just because it is performed by a prosecutor, a point which is underscored by the Court's subsequent *Buckley* and *Reed* decisions.

Defendants also mistakenly cite to *Harris v. City of Chicago,* 2015 U.S. Dist. LEXIS 122500, *12-13 (N.D. Ill. Sept. 15, 2015) (Shah, J.) to argue that Kelly cannot be held liable because he did not develop any evidence used to prosecute Smith. (County Defs. Memo at 6). That case, however, does not stand for that proposition, but rather supports Plaintiff's arguments. In *Harris*, the Court rejected the County's conclusory argument that the assistant state's attorney was immune from prosecution because his conduct arose "solely out of actions he undertook as a Felony Review assistant state's attorney in the initiation of charges in the state's criminal prosecution of Plaintiff," *id.* at 5, the very boilerplate language the County Defendants set forth to seek immunity for Kelly in this case. (County Defs. Memo at 2). Instead, the Court looked at the actions the felony review attorney was alleged to have engaged in, including participating in the plaintiff's interrogation, fabricating the false confession, and reducing it to writing for the

8

plaintiff to sign. *Id.* at 7-8. Finding that the state's attorney in *Harris* was alleged to have generated false evidence to support a criminal charge, the Court found he was acting as an investigator rather than as a prosecutor and therefore did not enjoy absolute immunity. *Id.*[3]

Likewise, *Spiegel v. Rabinovitz,* 121 F.3d 251 (7th Cir. 1997) similarly fails to support the County Defendants' position. There, the plaintiff alleged that the prosecutor failed to properly investigate the underlying criminal allegations and evaluate varying witness testimony when deciding whom to charge. Smith makes no such allegations in his complaint.

The County Defendants' reliance on *French v. Corrigan*, 432 F.2d 1211 (7th Cir. 1970) is similarly misplaced because that case involved allegations completely unlike those before this Court. (County Defs' Memo at 6.) In *French*, a *pro se* plaintiff had complained in conclusory fashion that certain Assistant State's Attorneys had conspired with his appointed appellate counsel to deny him his civil rights, and that they had collectively made false statements inducing the Appellate Court to affirm his conviction. *Id.* at 1212-13. The complaint failed to identify a single false statement in the record, recite a single specific action taken by the prosecutors or his defense attorneys, or describe any meeting among the defendants. *Id.* at 1213. That is simply not the situation here.

Smith's allegations against Kelly state actionable constitutional violations, and establish that any claim of absolute immunity is inappropriate. The County Defendants have failed to meet their burden "of showing that such immunity is justified for the function in question," *see Burns*,

---

[3] It appears that Defendants meant to cite another *Harris* case, *Harris v. City of Chicago*, 2015 U.S. Dist. LEXIS 34835, at *19 (N.D. Ill. Mar. 19, 2015). In that case, the Court held that the felony review state's attorneys could not be sued because the plaintiff did not allege that they asked any questions or tried to develop any evidence. *Id.* Here, in contrast, Plaintiff alleges that Kelly took an active role by conspiring with Dignan, asking Plaintiff questions and developing the crucial piece of evidence – Plaintiff's false confession.

500 U.S. at 486, and therefore their motion to dismiss Plaintiff's federal claims on the grounds of absolute prosecutorial immunity should be denied.

      **B.**      **Kelly Is Not Entitled to Absolute Prosecutorial Immunity on Smith's State Law Claims.**

Kelly is also not entitled to absolute prosecutorial immunity on Smith's state law claims for the same reasons set forth above, and for the additional reason that prosecutorial immunity under state law is not absolute and is more restrictive than under federal law. *See Cook v. Weber*, 698 F.2d 907, 910 (7th Cir. 1983); *Aboufariss v. City of De Kalb*, 305 Ill. App. 3d 1054, 1064-65 (2d Dist. 1999) (public official immunity only shields prosecutor for acts that prosecutor took without "malicious motives"); *People v. Patrick J. Gorman Consultants, Inc.*, 111 Ill. App. 3d 729 (1st Dist. 1982). Since Kelly specifically alleges that Kelly acted with malice, his claim to state law immunity must be rejected. However, even if federal law is applied, immunity is likewise unavailable for the reasons set forth in the preceding Section. *See Whitlock*, 682 F.3d at 587 ("In Illinois, immunity is either the same as, or harder to obtain, than it is in a federal court.").

## II.    KELLY IS NOT ENTITLED TO QUALIFIED IMMUNITY

      **A.**      **Smith's Rights to a Fair Trial and to Be Free From a Coerced Confession Were Clearly Established in 1983.**

In Count I, Smith's claims against Kelly are grounded in the due process right to a fair trial and the right not to be wrongfully convicted or imprisoned on the basis of manufactured evidence (i.e., his false confession). These due process rights were clearly established well before the wrongful acts at issue here began. *See, e.g., Mooney v. Holohan*, 294 U.S. 103 (1935); *Pyle v. Kansas*, 317 U.S. 213 (1942); *Napue v. Illinois*, 360 U.S. 264 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963); *U.S. v. Bagley*, 473 U.S. 667 (1985); *Jones v. City of Chi.*, 856

F.2d 985 (7th Cir. 1988). Moreover, in *Fields II* and *Whitlock*, the Seventh Circuit, relying on *Mooney, Pyle,* and *Napue,* found that it was clearly established that prosecutors who manufactured evidence while acting in an investigatory role could be held liable for due process violations and were not entitled to qualified immunity. *Fields,* 740 F.3d at 1114; *Whitlock*, 682 F.3d 579-80. In *Fields*, the Seventh Circuit held it was established "long before" 1985 that a government lawyer's fabrication of evidence violated due process. 740 F.3d at 1114. Further, as noted by the Court in *Whitlock*: "[i]t would be 'incongruous,' to hold a police officer liable for fabricating evidence but hold that the prosecutor has not committed any violation for taking the same action in the same capacity." *Whitlock*, 682 F.3d at 581 (*quoting Burns,* 500 U.S. at 495); *see also Patrick v. City of Chi.*, 2014 U.S. Dist. LEXIS 174325, *19 (N.D. Ill. Dec. 17, 2014).

In Count II, Smith's right to be free from a coerced confession, and his substantive due process right to be free from an interrogation that shocks the conscience, were also clearly established well before his 1983 interrogation. The right to be free from physical abuse during an interrogation is equally well established. *See Brown v. Mississippi,* 297 U.S. 278 (1936); *Jackson v. Denno,* 378 U.S. 368 (1964); *Wilson v. City of Chicago,* 6 F.3d 1230 (7th Cir. 1993); and 120 F.3d 681 (7th Cir. 1997). Thus, Kelly's qualified immunity arguments are meritless.

The County Defendants do not cite a single case to indicate that Kelly should not have been aware of Smith's constitutional rights at the time Kelly participated in Smith's interrogation in 1983. Instead, relying on *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995), they claim that Kelly was not personally involved in the coercion or fabrication of Smith's confession. The Court in *Gentry* found that law enforcement officials are personally responsible when they knew about the conduct and facilitated it, approved it, condoned it, or

turned a blind eye to it. *Id.* In this case, Kelly was present during the latter portion of Smith's interrogation, and he actively worked with Dignan to compel him to answer questions and elicit his court reported confession knowing that it was false. It is also fair to infer that he was aware that Smith was injured and that he suffered physical abuse at the hands of Dignan and Byrne. Thus, Smith has alleged more than sufficient facts to demonstrate Kelly was personally involved in coercing his false confession to hold him liable for Counts I and II.

### B. Kelly Is Liable for Failing to Intervene in Smith's Coercive Interrogation and the Fabrication of His False Confession.

As set forth in Section I, Smith alleges that Kelly was an active participant who conspired with Dignan and Byrne to knowingly fabricate Smith's false confession and to coerce him into giving it. In the alternative, Smith contends that Kelly failed to intervene to prevent the fabrication of his confession, coercive interrogation and his wrongful conviction despite having the opportunity to do so.

The County Defendants argue that there is no cognizable constitutional claim to hold ASAs responsible for failing to intervene in the conduct of police officers. Their arguments fly in the face of well-established §1983 principles and case law mandating that Kelly, as a state actor, had a duty to intervene. "A state actor's failure to intervene renders him or her culpable under §1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *see also Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972). A law enforcement officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of civilians is liable if that officer had reason to know that excessive force was being used or that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang*, 37 F.3d at 285. These

rulings, however, are not limited to police officers. They apply equally to state's attorneys who, when acting as law enforcement officials in an investigatory capacity, have a responsibility to intervene to stop unconstitutional conduct by other law enforcement officers. *See Whitlock*, 682 F.3d at 580 ("The only question is whether a prosecutor who is acting in an investigatory capacity is subject to rules that are any different. We think not."); *Harris,* 2015 U.S. Dist. LEXIS 122500, *11 (denying dismissal of plaintiff's claim that prosecutors failed to intervene, relying on *Whitlock*'s rule that prosecutors and police are subject to same duties when acting in an investigatory capacity); *Patrick v. City of Chi.*, No. 14 C 3658, 2014 U.S. Dist. LEXIS 174325. *27 (N.D. Ill. Dec. 17, 2014) (same); *Chatman v. City of Chicago*, No. 14 C 2945, 2015 U.S. Dist. LEXIS 28707, *32 (N.D. Ill. Mar. 10, 2015) (same); *Saunders,* 2013 U.S. Dist. LEXIS 161842 at *39-41 (same) ; *Rivera,* 974 F. Supp.2d at 1191; *Wilkinson,* 484 F. Supp. at 1086; *cf Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996) (nurse could be liable for failing to intervene when observing security officers physically attacking patient at state-run hospital).

Smith's allegations are more than sufficient to demonstrate that Kelly knew that Smith's constitutional rights were being violated and had an opportunity to intervene but failed to do so. He was present during Smith's interrogation at Area 2 and had the opportunity to observe his inability to recite the facts necessary to give a comprehensible confession to the Fullilove murder and his physical injuries. After seeing Smith struggle and realizing he needed Dignan to fill in the details of the confession, Kelly should have stopped the interrogation, refused to take his court-reported statement and reported the circumstances to his supervisors. He did none of those things.

In a transparent effort to evade liability, the County Defendants argue that certain Northern District of Illinois cases support their position. *See* County Defs' Memo at 10. But for

13

*Hobbs v. Capelutti*, 899 F. Supp. 2d 738 (N.D. 2012), each of the cited decisions was issued *prior to* the Seventh Circuit's ruling in *Whitlock* which made it clear that prosecutors are not immune and can be held liable for the same constitutional violations as can police officers when they act in an investigatory capacity. *Saunders,* 2013 U.S. Dist. LEXIS 161842 at *39-41. Further, the cases relied on by the County Defendants are distinguishable. In *Andrews v. Burge*, 660 F.Supp.2d 868, 877-878 (N.D. Ill. 2009), the only factual assertion in support of the allegation that the prosecutor was responsible for Andrews' coerced confession was that he was present at the station when the plaintiff initially refused to make an incriminating statement. In *Gordon,* there was no allegation that plaintiff was coercively interrogated and the prosecutors were alleged only to have violated plaintiff's rights after he had been arrested and arraigned.

Under controlling Seventh Circuit precedent, Smith's claim against Kelly for failing to intervene is cognizable, and the motion to dismiss on this ground must be denied.

## III.  SMITH'S CLAIMS IN COUNTS II AND VI ARE TIMELY

The County Defendants contend that Smith's coercive interrogation and intentional infliction of emotional distress claims are untimely. Smith relies on his response to the Police Defendants' Motion to Dismiss in which he argues both of these claims are timely at Section IV and IX.  He here incorporates those arguments herein.

## IV.  THIS COURT HAS SUBJECT MATTER JURISDICTION OVER SMITH'S STATE LAW CLAIMS

The County also argues that they are protected from Smith's state law claims by the Illinois doctrine of sovereign immunity. They claim Kelly is a state officials, and therefore, the Court of Claims is the sole jurisdiction available for Smith' state law claims. This argument cannot prevail because Smith has sufficiently alleged that Kelly's misconduct is malicious and

outrageous in nature, which removes the shield of sovereign immunity.

Under Illinois law, a state actor is not entitled to sovereign immunity when it is alleged that the State's agent acted in violation of statutory or constitutional authority or in excess of his authority. *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990). Thus, where a State official is alleged to have acted beyond the scope of his authority through wrongful acts, the official and not the State is the real party in interest and the suit may proceed. *Whitlock,* 682 F.3d at 589 (*quoting Turpin v. Koropchak*, 567 F.3d 880, 884 (7th Cir. 2009): "[W]hen an officer of the State commits an unconstitutional act or violates a statute, the suit is not against the State, because the State is presumed not to violate its own constitution or enactments"; Illinois State Police defendants were not entitled to avail themselves of sovereign immunity for concealing exculpatory evidence); *Senn Park Nursing Center v. Miller,* 104 Ill.2d 169, 188 (1984) (same); *Welch v. Illinois Supreme Court*, 322 Ill.App.3d 345, 353 (3d Dist. 2001) ("malice, if properly pleaded, is outside the scope of a State employee's authority and must be brought in the circuit court and not the Court of Claims."); *Hoffman v. Yack*, 57 Ill.App.3d 744 (5th Dist. 1978) (a State employee is not shielded by sovereign immunity for wrongfully and maliciously making false accusations concerning another employee's competency and integrity). Also, where the State official is alleged to have breached a duty owed to the public generally, independent of the fact of State employment, the Circuit Court action may proceed. *Currie v. Lao*, 148 Ill.2d 151, 159 (1992).

Courts in the Northern District of Illinois have also consistently held that the Illinois Court of Claims does *not* have exclusive jurisdiction over similar state law claims brought against CCSAO defendants in cases involving coercive interrogation claims. *See Chatman v. City of Chicago*, 2015 U.S. Dist. LEXIS 28707, *33 (N.D. Ill. Mar. 10, 2015); *Saunders,* 2013 U.S. Dist. LEXIS 161842 at *50; *Tillman*, 813 F. Supp. 2d 946*; Cannon v. Burge*, 2006 WL

273544, *17 (N.D. Ill. Feb. 2, 2006); *Orange v. Burge,* 2005 WL 742641, *18 (N.D. Ill. Mar. 30, 2005); *Patterson v. Burge,* 328 F. Supp. 2d 878, 887 (N.D. Ill. 2004). Kelly's overt acts in participating in Smith's coercive interrogation and obtaining a false and fabricated confession, all intended to convict and incarcerate an innocent man, are clearly unconstitutional, malicious, illegal and immoral. These allegations place the Kelly far outside the boundaries of sovereign immunity.

## V. SMITH'S CLAIMS FOR CONSPIRACY, MALICIOUS PROSECUTION AND BRADY ARE VIABLE AND SUFFICIENTLY PLED

Smith relies on his response to the Police Defendants' motion to dismiss with respect to his claims pursuant to *Brady*, and viability of his federal and state malicious prosecution and conspiracy claims.

## VI. COOK COUNTY IS A NECESSARY PARTY FOR PURPOSES OF INDEMNIFICATION UNDER 745 ILCS § 10/9-102

County Defendants' argument notwithstanding, Smith is not seeking to hold the County liable pursuant to *respondeant superior*. Rather, he claims that the County is a necessary party for purposes of indemnification. He alleges that Cook County and its State's Attorney's Office was the employer of Kelly, who was acting within the scope of his employment during the complained of events. Because the County is responsible for any judgment entered against Kelly, it is therefore a necessary party and should not be dismissed.

Both the Seventh Circuit and Illinois Supreme Court agree that a county may be liable to pay a judgment against a state employee where the county is responsible for the payment of expenses and judgments originating from the work of that employee's office. *See Robinson v. Sappington*, 351 F.3d 317, 339 (7th Cir. 2003) ("The responsibility for maintaining and funding [a County office] lies with [the] County. Under Illinois law, it is responsible for the payment of

expenses and judgments emanating from the workings of that [office]); *see also Carver v. LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003) (certifying the question to the Illinois Supreme Court and citing that court's ruling in *Carver v. Lasalle County*, 203 Ill. 2d 497 (2003)); *National Cas. Co. v. McFatridge*, 604 F.3d 335, 345 (7th Cir. 2010) ("the county is only a necessary party to suit so that, as an insurer or backstop for the independent official, it may veto improvident settlements").

Furthermore, it is also in the interest of judicial economy for Cook County to remain a party because it may be required to pay a judgment entered against Kelly. *See Robinson*, 351 F.3d at 339. As the Seventh Circuit and District Courts have repeatedly held, there is no reason why a plaintiff should not be permitted to proceed with an indemnification claim before her action against the municipal employee is final; furthermore, there is no benefit in requiring a plaintiff to initiate a separate proceeding for indemnification at a later date. *See, e.g., Wilson v. City of Chicago*, 120 F.3d 681, 684-85; *Griffin v. Meagher*, 2009 U.S. Dist. LEXIS 118598, *15-16 (N.D. Ill. Dec. 21, 2009); *Blancas v. Village of Rosemont*, 2008 U.S. Dist. LEXIS 88380, *6-7 (N.D. Ill. 2008); *Malden v. City of Waukegan*, 2004 U.S. Dist. LEXIS 20843, *4 (N.D. Ill. May 11, 2004). Finally, as noted in *Carver*, 324 F.3d at 948, it is actually *in the County's interest* to remain a party so that it may have a voice in the resolution of litigation against its officers or employees.

## CONCLUSION

For the forgoing reasons, this Court should enter an order denying the Cook County Defendants' motion to dismiss in its entirety and ordering any other relief as is just and equitable under the circumstances.

Dated: August 22, 2016                    Respectfully submitted,

                                          /s/ Joey L. Mogul
                                          Joey L. Mogul
                                          Ben H. Elson, G. Flint Taylor
                                          PEOPLE'S LAW OFFICE
                                          1180 N. Milwaukee Avenue
                                          Chicago, IL 60642
                                          (773) 235-0070

                                          Attorneys for Plaintiff Alonzo Smith

18