**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALONZO SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 3404 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| Former Chicago Police Department Commander | ) | Magistrate Judge Mary M. Rowland |
| JON BURGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS BURGE, BYRNE, DIGNAN**
**AND THE CITY OF CHICAGO'S MOTION TO DISMISS**

Respectfully submitted,

Ben H. Elson, Joey L. Mogul,
G. Flint Taylor, Jr.
People's Law Office
1180 N. Milwaukee Avenue
Chicago, IL 60642
(773) 235-0070

Attorneys for Plaintiff Alonzo Smith

**Table of Contents**

SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT ...................................................1

STANDARD OF REVIEW ...................................................................................................4

ARGUMENT .......................................................................................................................5

    I.      Plaintiff's Complaint Gives Defendants Proper Notice of Plaintiff's Claim for Deprivation of a Fair Trial and Wrongful Conviction ...............................................5

    II.     Plaintiff Has Alleged a Viable Brady Claim............................................................6

      A.   Plaintiff's Brady Claim is Distinguishable From the Type of Brady Claims That Were Rejected in *Gauger v. Hendle*, *Harris v. Kuba* and *Saunders-El v. Rohde*....8

      B.   Plaintiff's Allegations that Defendant Daley and Certain Members of the Cook County State's Attorney's Office Were Aware of Torture at Area 2 Do Not Foreclose His Brady Claim Against the Police Defendants ................................10

      C.   Plaintiff Did Not Have the Ability to Discover the Pattern and Practice of Torture in 1983 ................................................................................................................11

      D.   Plaintiff's Brady Claim is Based on Suppressed Evidence of Systemic Torture at Area 2 that Predates His Trial ................................................................................12

    III.    Plaintiff's Failure to Intervene Claim in Count I is Sufficiently Pled .................13

    IV.    Plaintiff's Coercive Interrogation Claim is Timely ...............................................14

    V.     Plaintiff's Fabrication Claim is Sufficiently Pled.................................................16

    VI.    Plaintiff's Conspiracy Claims Should Not be Dismissed .....................................17

    VII.   Defendants Are Not Entitled to Qualified Immunity............................................21

    VIII. Plaintiff's Malicious Prosecution Claim is Sufficiently Pled ..............................22

    IX.    Plaintiff's Intentional Infliction of Emotional Distress Claim is Timely .............24

    X.     Plaintiff's Monell Claim Should Not be Dismissed .............................................27

CONCLUSION...................................................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888 (1995) .................................................................. 18

*Alvarado v. Litscher*, 267 F.3d 648 (7th Cir. 2001) ................................................................. 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 4

*Boyce v. Martella*, 2014 U.S. Dist. LEXIS 155844 (N.D. Ill. Nov. 4, 2014) ............................ 11

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................................... 22

*Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013) ................................................................... 24

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ........................................................................... 25

*Cannon v. Burge*, 2006 U.S. Dist. LEXIS 4040 (N.D. Ill. 2006) (St. Eve, J.) ........................... 7

*Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................................... 4

*Craig v. Huayamave*, 2005 U.S. Dist. LEXIS 13615 (N.D. Ill. 2005) ......................................... 7

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ............................................................................. 21

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007) ........................................ 4

*Engel v. Buchan*, 791 F. Supp. 2d 604 (N.D. Ill. 2011) ............................................................. 23

*Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006), ........................................................... 25

*Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003) ........................................................................ 8

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ............................................... 11, 18

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980) .............................................................................. 21

*Hampton v. Hanrahan*, 600 F.2d 600 (1979) ............................................................................. 20

*Harris v. City of Chicago*, 2015 U.S. Dist. LEXIS 34835 (N.D. Ill. Mar. 19, 2015) ................ 16

*Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) ................................................................. 8

*Heck v. Humphrey*, 512 U.S. 477 (1994) ................................................................................... 24

*Hill v. City of Chicago*, 2007 U.S. Dist. LEXIS 40211 (N.D. Ill. May 10, 2007) ...................... 7

*Hobbs v. Cappelluti*, 899 F. Supp. 2d 738 (N.D. Ill. 2012) ........................................................ 25

*Hobley v. Burge*, 2004 U.S. Dist. LEXIS 10228 (N.D. Ill. 2004) ............................................... 7

*Howard v. City of Chicago*, 2004 U.S. Dist. LEXIS 21537 (N.D. Ill. 2004 ................................. 7

*Ienco v. City of Chicago*, 286 F.3d 994 (7th Cir. 2002) .............................................................. 7

*Indianapolis Minority Contractors Ass'n Inc. v. Wiley*, 187 F.3d 743 (7th Cir. 1999) .............. 18

*Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) .................................................. 21

*Jimenez v. City of Chicago*, 830 F. Supp. 2d 432, 451 (N.D. Ill. 2011) ..................................... 14

*Jones v. City of Chi.*, 856 F.2d 985 (7th Cir. 1988) ................................................................... 22

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) ............................................................... 7

*Kitchen v. Burge*, 781 F. Supp. 2d 721, 727-28 (N.D. Ill. 2011) ................................................. 6

*Kitchen v. Burge*, No. 10 C 4093 (N.D. Ill.) ................................................................................ 6

*Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102 (4th Dist. 2011) ....................... 24

*Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006) ........................................................ 19

*Manning v. Miller*, 355 F.3d 1028 (7th Cir. 2004) .......................................................... 7

*Matz v. Klotka*, 769 F.3d 517 (7th Cir. 2014) ............................................................... 14

*Mitchell v. United Med. Sys.*, 2011 U.S. Dist. LEXIS 42627 (N.D. Ill. Apr. 20, 2011)............... 11

*Mooney v. Holohan*, 294 U.S. 103 (1935) .................................................................... 22

*Napue v. Illinois*, 360 U.S. 264 (1959) ...................................................................... 22

*Neiman v. Vill. of Deerfield*, 2015 U.S. Dist. LEXIS 171290 (N.D. Ill. Dec. 22, 2015).............. 23

*Newsome v. McCabe*, 256 F.2d 747 (7th Cir. 2001) (*Newsome I*) and 319 F.3d 301 (7th Cir. 2002) (*Newsome II*) ...................................................................................... 7

*Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003)........................................................ 25

*Orange v. Burge*, 2005 U.S. Dist. LEXIS 7234 (N.D. Ill. 2005).......................................... 7

*Parish v. City of Elkhart*, 614 F.3d 677, 684 (7th Cir. 2010) .......................................... 24

*Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. 2004) ............................................... 7

*People v. Patterson*, 192 Ill. 2d 93, 108-09 (2000)...................................................... 11

*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014). ................................................ 17

*Phillips v. City of Chicago*, 2015 U.S. Dist. LEXIS 127923 (N.D. Ill. Sept. 24, 2015)............... 15

*Pyle v. Kansas*, 317 U.S. 213 (1942) ........................................................................ 22

*Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1188 (N.D. Ill. 2013) ................................. 15

*Saunders v. City of Chicago*, 146 F. Supp. 3d 957 (N.D. Ill. Nov. 17, 2015) ........................ 15

*Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015)....................................................... 8

*Starks v. City of Waukegan*, 946 F. Supp. 2d 780 (N.D. Ill. 2013).................................. 14, 25

*Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007)........................................................... 26

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010)................................................. 4

*Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996)........................................................... 22

*Taylor v. City of Chicago*, 80 F. Supp. 3d 817, 826 (N.D. Ill. 2015) ................................. 15

*Tillman v. Burge*, 813 F. Supp. 2d 946, 970-71 (N.D. Ill. 2011)......................................... 7

*Tillman v. Burge*, No. 10 C 4551 (N.D. Ill.) ............................................................... 6

*U.S. v. Bagley*, 473 U.S. 667 (1985) ........................................................................ 22

*Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011)......................................................... 4

*Walden v. City of Chicago*, 2005 U.S. Dist. LEXIS 9578 (N.D. Ill. 2005) ............................. 7

*Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997)........................................ 23

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) ............................................ 10, 16

*Wrice v. Burge*, 2015 U.S. Dist. LEXIS 129628 (N.D. Ill. Sept. 25, 2015) ........................... 20

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)....................................................... 14

**Statutes**

§ 1986........................................................................................................ 18

42 U.S.C. § 1985........................................................................................ 3, 18

42 U.S.C. § 1986........................................................................................... 18

§ 1983........................................................................................ 14, 15, 21, 22

§ 1985.................................................................................................................................. 18

**Rules**

Fed. R. Civ. P. 8(a)(2)........................................................................................................ 4

Fed. R. Civ. P. 8(d)(2)........................................................................................................ 11

Fed. R. Evid. 201(b)........................................................................................................... 16

## SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT[1]

Plaintiff Alonzo Smith was wrongfully convicted and imprisoned for nearly 20 years for a 1983 murder, armed robbery and home invasion that he did not commit. On January 21, 1983, Plaintiff voluntarily went to Area 2 police headquarters for questioning and, following a brutal, physically coercive interrogation, was falsely charged with the murder, armed robbery and home invasion of James Fullilove. Complaint ¶¶ 1, 22-51. The principal and determinative evidence connecting Plaintiff to the Fullilove murder was his false, fabricated and coerced confession, which defendants Byrne and Dignan extracted from him using coercive tactics so extreme that they are aptly characterized as torture. *Id.*, ¶¶ 22-51, 58, 65, 67, 69. Plaintiff's false confession was presented to prosecuting attorneys who relied upon and presented this "evidence" throughout Plaintiff's prosecution and used it to wrongfully convict Plaintiff of a crime that he did not commit. *Id.*, ¶¶ 52, 56-68. In 2015, following a full evidentiary hearing, Cook County Circuit Court Judge Erica Reddick found that Plaintiff had been tortured into giving a

---

[1] The section of Defendants' brief titled "Factual Background" includes facts beyond those alleged in the complaint, including: "[Glenda] Cobb was spared and later called police to report that plaintiff and co-defendant Allen Davis robbed Fullilove of cocaine and cash at gun point and that plaintiff then drowned Fullilove in the bathtub"; "Plaintiff failed the lie detector test"; and "Plaintiff . . . was placed in a lineup and positively identified by Glenda Cobb." Defs. Br. at 2. These "facts" are taken from Rule 23 orders affirming plaintiff's criminal convictions. Although it is clear that the Court can take judicial notice of a court order, it cannot take as true the matters asserted in the court order, especially if they are subject to reasonable dispute. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that *is not subject to reasonable dispute* . . ."); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-83 (7th Cir. 1997) ("if a court could take judicial notice of a fact simply because it was found to be true in a previous action, the doctrine of collateral estoppel would be superfluous."); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008); *Malaker v. Cincinnati Ins. Co.*, 2011 U.S. Dist. LEXIS 37768, *18-19 (N.D. Ill. Apr. 7, 2011) (St. Eve, J.). Since the above cited facts concerning the circumstances behind Glenda Cobb's identification of Plaintiff as the purported murderer and Plaintiff allegedly failing a lie detector test are hotly disputed, Cobb's credibility has subsequently been completely destroyed, and the Rule 23 order has been rendered null and void by Judge Reddick's subsequent vacation of Plaintiff's conviction, and the State's dismissal of his case, this Court should not take judicial notice of these facts or rely on them in ruling on Defendants' motion to dismiss.

confession, granted his post-conviction petition, vacated his conviction, and granted him a new trial. *Id.*, ¶ 116. On October 19, 2015, the prosecution dismissed all charges against Plaintiff. *Id.*, ¶ 116.

Plaintiff alleges that Defendants Byrne and Dignan, acting in concert with, and under the close supervision and monitoring of, Defendant Jon Burge - - - who was the supervising lieutenant in the Fullilove investigation and who threatened Plaintiff by telling him, on two occasions, that he would talk "one way or another" "before the night was over with," and that they "had ways of making [him] talk," - - - participated directly in physically coercing and fabricating a false confession from Plaintiff. *Id.*, ¶¶ 22-51. The complaint alleges extreme physical violence that Plaintiff endured during his interrogation at Area 2 police headquarters, including Byrne and Dignan taking him to the basement of Area 2 repeatedly suffocating him with a plastic bag, kicking him in the stomach and beating him about his body with a black rubber nightstick, and racial motivation for the brutality inflicted on Plaintiff. *Id.*, ¶¶ 22-51, 71, 134.

The complaint alleges facts showing that the torture of Plaintiff was not an isolated occurrence, but was rather "part of a long-standing pattern and practice of similar acts of racially motivated torture . . . committed against African American men under the supervision, and with the encouragement, participation and ratification of Defendants Burge and Byrne." *Id.*, ¶ 71. The complaint alleges that Burge and Byrne "engaged in a pattern and practice of torture and brutality [themselves], and also supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives, including, but not limited to, Defendant Dignan." *Id.*, ¶¶ 7-8.

2

Plaintiff's complaint alleges a total of nine claims, all of which are challenged by Defendants Byrne, Dignan, Burge (the "Police Defendants") and the City of Chicago (the "City"). Plaintiff's complaint alleges, *inter alia*, that Defendants Byrne, Dignan, and Burge, individually, jointly, and in conspiracy caused his conviction by torturing, coercing and fabricating false statements from him and by concealing exculpatory evidence, and that these actions violated his constitutional right to a fair and impartial trial and not to be wrongfully convicted (Count I);[2] violated his rights under the Fifth and Fourteenth Amendments to be free from coercive interrogation (Count II); were part of a racially motivated conspiracy which deprived Plaintiff of his right to equal protection under the Fourteenth Amendment, and 42 U.S.C. § 1985 (Count III); that the City of Chicago is liable because the actions of the individual defendants were taken pursuant to the City's *de facto* policies practices and customs (Count IV), and that the City is obligated to indemnify the individual defendants (Count IX) and is liable for state law violations pursuant to *respondeat superior* (Count VIII); and that the actions of Defendants Byrne, Dignan and Burge violated state law prohibitions against malicious prosecution (Count V), intentional infliction of emotional distress (Count VI), and conspiracy (Count VII).

Defendants Byrne, Dignan and Burge argue that the denial of a fair trial and wrongful conviction claim fails to give them proper notice under Rule 8; that the complaint fails to properly allege *Brady* violations; that the coercive interrogation claim is untimely; that Plaintiff's fabrication claim is insufficient; that the conspiracy claims are too general; that they are entitled to qualified immunity; that the malicious prosecution claim fails because probable cause existed

---

[2] Plaintiff also intended to include a Fourth Amendment malicious prosecution claim in Count I. Plaintiff realizes that the Seventh Circuit does not recognize such a claim, but it is his intention to preserve that claim in this case, pending consideration of the issue by the United States Supreme Court in *Manuel v. City of Joliet*, No. 14-9496.

for Plaintiff's prosecution, there are no allegations of malice, and the charges were not dismissed in a manner indicative of innocence; and that the IIED claim is untimely.[3] Finally, the City of Chicago argues that Plaintiff's claims against it should be dismissed if the underlying claims against the individual defendants are dismissed.

For the reasons set forth below, none of these arguments have any merit since Plaintiff's claims are timely and adequately allege constitutional and state law violations, and the motion should be denied in its entirety.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include "sufficient detail to give the defendants fair notice" of the claims alleged against them. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).The complaint must also "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; see also *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.").

At the motion to dismiss stage, "the court must construe all of the Plaintiff's factual allegations as true, and must draw all reasonable inferences in the Plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Dismissal for failure to state a claim under Rule

---

[3] Defendants also argue that "any federal claims for false arrest and imprisonment" are time barred. Defs. Br. at 19. Plaintiff has not asserted any claims for false arrest and imprisonment.

12(b)(6) is proper only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Virnich*, 664 F.3d at 212.

## ARGUMENT

### I. Plaintiff's Complaint Gives Defendants Proper Notice of Plaintiff's Claim for Deprivation of a Fair Trial and Wrongful Conviction

Count I of the complaint alleges that Defendants Byrne, Dignan and Burge, knowing that Plaintiff was innocent, framed him for murder when they tortured and coerced him into making a false and fabricated confession, which was provided to the prosecuting attorneys for their use in Plaintiff's criminal prosecution. Complaint, ¶¶ 58, 65, 69, 121-25. Plaintiff further alleges that this coerced, constructed and fabricated evidence was presented as the chief piece of incriminating evidence against him at trial. *Id.* ¶ 67. Plaintiff also alleges that Defendants Byrne, Dignan and Burge withheld from the prosecutors, Plaintiff, and the court the following information: (1) that their abuse of Plaintiff was part of a pattern and practice of racially motivated police torture at Area 2, in which they participated; (2) that they used, suppressed and destroyed implements of torture, including the black rubber nightstick and plastic bag used against Plaintiff; (3) that they tortured Plaintiff in order to obtain his confession; (4) that Plaintiff's confession was false and fabricated; and (5) that they harbored the intent to frame Plaintiff. *Id.* ¶¶ 58, 65, 69-70, 122. Plaintiff additionally alleges that this withheld exculpatory evidence was so exonerating that he never would have been convicted but for its suppression. *Id.* ¶ 67. Finally, he alleges that the suppression, coercion and fabrication, together with the Defendants' deception and manipulation of the prosecuting attorneys, violated Plaintiff's right to a fair trial and not to be wrongfully convicted. *Id.* ¶¶ 121-25.

Defendants disingenuously assert that Count I does not give them fair notice of the claims against them because "no specific constitutional provision is identified." Defs. Br. at 7. However,

there is no requirement that a complaint must identify a specific constitutional provision in order to satisfy Rule 8. Count I provides more than sufficient detail to give Defendants fair notice of the claims. In fact, there is no question that Defendants have fair notice of the claims because their lawyers have defended against identical claims in two previous torture and wrongful conviction cases—*Tillman v. Burge*, No. 10 C 4551 (N.D. Ill.) and *Kitchen v. Burge*, No. 10 C 4093 (N.D. Ill.). Count I of the *Tillman* and *Kitchen* complaints is worded the same as it is in the present case, except that in *Tillman* and *Kitchen*, the claim referenced the "Fourteenth Amendment" whereas here it references the "U.S. Constitution."

Plaintiff should not be required to undertake the pointless task of re-pleading Count I to add a reference to the Fourteenth Amendment. Defendants understand the claims made against them and must answer the complaint.

## II.    Plaintiff Has Alleged a Viable *Brady* Claim

Defendants next argue that the above described allegations of extraordinary official lawlessness and manipulation of the judicial process in pursuit of Plaintiff's wrongful conviction and imprisonment cannot constitute *Brady* violations because: Plaintiff knew that he had been tortured; the Defendants had no duty to disclose their own misconduct to prosecutors; Plaintiff has pleaded himself out of court by alleging that Defendant Daley was aware of the pattern and practice of torture at Area 2; Plaintiff could have independently discovered the suppressed evidence; and Burge's misconduct and any misconduct that occurred after Plaintiff's trial is not *Brady* material. As shown below, none of these arguments withstand scrutiny.

Over the past decade, numerous wrongful conviction cases involving Area 2 police torture have been litigated in the Northern District of Illinois, including at least one before this Court. *See, e.g., Kitchen v. Burge*, 781 F. Supp. 2d 721, 727-28 (N.D. Ill. 2011) (Bucklo, J.);

*Tillman v. Burge*, 813 F. Supp. 2d 946, 970-71 (N.D. Ill. 2011) (Pallmeyer, J.); *Cannon v. Burge*, 2006 U.S. Dist. LEXIS 4040 (N.D. Ill. 2006) (St. Eve, J.); *Orange v. Burge*, 2005 U.S. Dist. LEXIS 7234 (N.D. Ill. 2005) (Holderman, J.); *Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. 2004) (Gottschall, J.); *Hobley v. Burge*, 2004 U.S. Dist. LEXIS 10228 (N.D. Ill. 2004) (Aspen, J.); *Howard v. City of Chicago*, 2004 U.S. Dist. LEXIS 21537 (N.D. Ill. 2004) (Andersen, J.). In each of these cases, the plaintiff alleged a *Brady* claim that is, in some instance less specific and extensive, and in others almost identical to the *Brady* claim alleged by Plaintiff here, and in each of these cases, the court upheld the plaintiff's *Brady* claim at the motion to dismiss stage. Defendants' failure to address or even acknowledge any of these decisions, especially this Court's decision in *Cannon*, is troubling.

Plaintiff's allegation within Count I that Defendants Byrne, Dignan and Burge suppressed exculpatory evidence from the prosecuting attorneys and defense counsel in Plaintiff's criminal proceedings is an actionable due process *Brady* claim which has been squarely recognized by the Seventh Circuit in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988); *Newsome v. McCabe*, 256 F.2d 747 (7th Cir. 2001) (*Newsome I*) and 319 F.3d 301 (7th Cir. 2002) (*Newsome II*); *Manning v. Miller*, 355 F.3d 1028 (7th Cir. 2004); and *Ienco v. City of Chicago*, 286 F.3d 994 (7th Cir. 2002), as well as in many other decisions from this District including those cited above. *See also Hill v. City of Chicago*, 2007 U.S. Dist. LEXIS 40211, *21-22 (N.D. Ill. May 10, 2007) (St. Eve, J.); *Craig v. Huayamave*, 2005 U.S. Dist. LEXIS 13615, *5-9 (N.D. Ill. 2005) and *Walden v. City of Chicago*, 2005 U.S. Dist. LEXIS 9578 (N.D. Ill. 2005). Clearly, as in *Tillman*, *Kitchen*, *Cannon*, *Orange*, *Patterson*, *Hobley*, and *Howard*, a crucial component of the suppressed information in the instant case is that the Defendants fabricated and coerced by

torture Plaintiff's false confession as part of a pattern and practice of racially motivated physical abuse in which they participated at Area 2.

    **A.    Plaintiff's *Brady* Claim is Distinguishable From the Type of *Brady* Claims That Were Rejected in *Gauger v. Hendle*, *Harris v. Kuba* and *Saunders-El v. Rohde***

Relying on *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003); *Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) and *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015), Defendants assert that there can be no *Brady* violation because Plaintiff knew about the circumstances of his interrogation, and the Defendants had no duty to disclose their own misconduct. These arguments are unavailing.

The fact that Plaintiff was aware of his torture does not excuse the Defendants from their obligations under *Brady*. In this case there was a plethora of other significant evidence that was withheld and suppressed. For example, Plaintiff alleges his illegal conviction and confinement were caused and prolonged by the Defendants' concerted efforts to suppress all evidence related to the systematic practice of torture under Burge at Area 2, including the suppression of the instruments of torture (*i.e.*, the plastic bag, rubber night stick, etc.), ensuring that Plaintiff could not possibly gather sufficient evidence to defend himself at trial and challenge his conviction on appeal. Complaint ¶¶ 61, 67, 70, 115, 122. Thus, in stark contrast to the *Gauger* line of cases, Plaintiff's claim falls squarely within the contours of the claims recognized in *Brady*, *Newsome*, *Manning*, *Ienco*, *Tillman*, *Patterson*, *Hobley*, *Howard*, and *Orange*. In *Tillman*, the court found:

> Tillman has alleged that the Defendant Officers engaged in "suppressing, destroying, and preventing the discovery" of exculpatory evidence, including that of "the instruments of torture," and have done so "by obstructing and improperly influencing investigations . . . [and] by suppressing and attempting to discredit findings of individual and systematic torture and abuse." (Compl. ¶ 101.) Because these allegations relate to circumstances that substantially exceed what Tillman was aware of based on his presence at the interrogation, the rationale of *Gauger*

does not bar Tillman's *Brady* claim regarding the failure to disclose systemic abuse of criminal suspects.

*Tillman*, 813 F. Supp. 2d at 962.

In *Patterson*, the court noted that Patterson's claim that police hid the coercion and fabrication of a confession might not itself state a *Brady* claim, but allegations that police hid their knowledge of his actual innocence, gave perjured testimony, brought false charges against him, and "*acted in concert to effectuate a pattern and practice of torture and frame-ups at Area 2,*" were adequate to state a valid *Brady* claim. *Patterson*, 328 F. Supp. 2d at 889 (emphasis added). The *Orange* court agreed with that reasoning, concluding that Orange stated a *Brady* violation because defendants (including individual officers, Burge, Hillard, Needham, Shines, Martin, an Assistant State's Attorney, and former State's Attorney Richard Devine) "caused Orange to experience an unfair trial through their false testimony and other acts taken to cover up the torture[-]obtained confession from Orange." *Orange,* 2005 U.S. Dist. LEXIS 7234, at *35. The court noted that "[t]he fact that Orange was present for the alleged torture has no impact on the defendants duty to disclose other exculpatory evidence." *Id. See also Cannon*, 2006 U.S. Dist. LEXIS 4040, *40-41 ("Plaintiff's knowledge of what transpired in the interrogation room does not relieve the City Defendants of their obligation under *Brady* to disclose exculpatory evidence regarding what transpired outside the interrogation room, or preclude the Court from finding the existence of a *Brady* violation.").

Furthermore, the *Brady* allegations in the present case are materially different from those found to be insufficient in *Gauger*, *Harris* and *Saunders-El*. In stark contrast to the *Brady* claims at issue in those cases, which were based simply on the defendant officers not informing the prosecutors of their own misconduct in that particular case, the allegations in the present case involve concealment and suppression of exculpatory evidence on a massive scale, including

9

numerous acts of suppression, over a period of decades, of a pattern and practice of systemic torture.

### B. Plaintiff's Allegations that Defendant Daley and Certain Members of the Cook County State's Attorney's Office Were Aware of Torture at Area 2 Do Not Foreclose His *Brady* Claim Against the Police Defendants

Defendants assert that Plaintiff has forfeited his *Brady* claim against them and "pleaded himself out of court" by alleging that Defendant Daley and certain other members of the State's Attorney's Office were already aware of torture at Area 2 beginning in 1982 during the Andrew and Jackie Wilson case. Defs. Br. at 12.

A similar argument was rejected by the Seventh Circuit in *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012). In *Whitlock*, police officers and a State's Attorney formed an "investigative team" that conspired to frame the plaintiffs for murder, and then covered up their misdeeds for decades. The police defendants argued that their obligation under *Brady* to disclose exculpatory evidence was discharged because the State's Attorney was already aware of the *Brady* material. The court found that *Brady* was not so easily sidestepped:

> The police defendants suggest that the fact that State's Attorney McFatridge was aware of this conduct would have discharged their *Brady* obligations. But police must disclose exculpatory evidence to a "competent authority." *Fermon*, 494 F.3d at 630. It is not likely that the police may take shelter behind a prosecutor who is conspiring with them to fabricate false evidence against innocent suspects.

*Id.* at 576.

Plaintiff's complaint alleges that Defendant Daley and the Police Defendants acted in conspiracy with each other to deprive Plaintiff of his constitutional right to a fair trial by, *inter alia*, withholding exculpatory evidence of the pattern and practice of torture at Area 2. Complaint, ¶¶ 118, 121-23, 129-30, 133-35. Thus, like the State's Attorney in *Whitlock*, Defendant Daley and other members of the State's Attorney's Office who are alleged to have

known about and suppressed the pattern and practice of torture at Area 2 are not "competent authorities" who could absolve the Police Defendants of their *Brady* obligations.

Moreover, even if Defendants are correct that Defendant Daley's alleged knowledge of Area 2 torture relieved them of their *Brady* obligations, it would still be improper for the Court to dismiss Plaintiff's claim at this stage of the proceedings because "plaintiffs may allege separate legal theories in the alternative at the pleading stages of a lawsuit." *Mitchell v. United Med. Sys.*, 2011 U.S. Dist. LEXIS 42627, *14 (N.D. Ill. Apr. 20, 2011) (St. Eve, J.); Fed. R. Civ. P. 8(d)(2).

### C. Plaintiff Did Not Have the Ability to Discover the Pattern and Practice of Torture in 1983

Defendants' assertion that Plaintiff cannot maintain a *Brady* claim because he purportedly had the ability to independently discover the suppressed evidence is essentially an attempt to shoehorn a motion for summary judgment into the guise of a motion to dismiss. Since this argument is based on gross supposition and facts beyond the complaint, it is not properly before the Court at this stage of the proceedings and should be rejected for that reason alone. *See Boyce v. Martella*, 2014 U.S. Dist. LEXIS 155844, *7 (N.D. Ill. Nov. 4, 2014) (St. Eve, J.) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)) ("[a] motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice").

In any event, it is abundantly clear that in 1983 Plaintiff and his defense attorney could never have uncovered the truth about torture and physical abuse under Burge's command at Area 2. The Illinois Supreme Court affirmed this unassailable point in *People v. Patterson*, 192 Ill. 2d 93, 108-09 (2000). In that case, torture victim Aaron Patterson argued that his trial lawyer, Luther Hicks, was ineffective because—in 1987—he did not discover or present evidence of

11

other cases of torture at Patterson's suppression hearing. The Court rejected that argument,

stating:

> [M]uch of the information relating to other allegations of torture would simply not have
> been discoverable by Hicks at the time of the suppression hearing in 1987. At
> approximately the same time that defendant's case was proceeding, defendant's current
> attorney, G. Flint Taylor, Jr., was representing Wilson in a federal suit against the City of
> Chicago, Burge, and other officers. Notwithstanding the fact that Taylor had available to
> him the full panoply of the civil discovery process, he did not discover the vast majority
> of the information upon which defendant now relies until February 1989, two years after
> Hicks filed defendant's motion to suppress. Moreover, Taylor discovered the information
> relating to the other allegations of torture only because he was assisted by an anonymous
> police department informant.
>
> Additionally, beyond interviewing anyone who had ever been a prisoner at Area 2, we
> can conceive of no manner in which Hicks reasonably could have obtained . . .
> information [regarding the systematic pattern and practice of torture under Burge]. At the
> time [of the suppression hearing in 1987], the OPS had no reports indicating that several
> other people had been tortured. Defendant has identified no other available source that
> could provide this information.

*Patterson*, Ill.2d 108-09. Thus, just as Aaron Patterson's criminal lawyer was not ineffective in

1987 for failing to discover the systematic pattern of torture under Burge, so Plaintiff and his

counsel were not willfully blind or unreasonable for failing to discover it in 1983.

### D. Plaintiff's *Brady* Claim is Based on Suppressed Evidence of Systemic Torture at Area 2 that Predates His Trial

Again interposing arguments that should await a fuller evidentiary record, Defendants

argue that Plaintiff's allegations of systemic torture at Area 2 cannot constitute *Brady* material

because: (1) Plaintiff does not specifically identify which of the scores of torture victims listed in

the complaint were tortured by Byrne and Dignan prior to Plaintiff's trial; and (2) any

misconduct involving Burge that occurred before Plaintiff's trial is irrelevant because Burge did

not physically abuse Plaintiff.

As an initial matter, paragraph 76 of the complaint, which lists the scores of African

American men that were tortured by Burge, Byrne, Dignan and others both before and after

Plaintiff's criminal trial, without specifying the date on which each man was tortured and which particular detectives were involved in his torture, is more than sufficient at this stage of the proceedings to support a *Brady* claim against these Defendants.

Second, and more fundamentally, the exculpatory evidence that was suppressed and withheld was not simply other individual acts of torture by Defendants Byrne and Dignan prior to Plaintiff's trial; rather, it was the suppression of the pattern of systemic torture of African American suspects at Area 2 by Burge and the detectives under his command which began in 1973, ten years prior to Plaintiff's trial. Defendants' argument that Burge is irrelevant to the *Brady* claim because he did not personally torture Plaintiff is absurd. Burge was the supervising lieutenant in the Fullilove case and he threatened Plaintiff by telling him, on two occasions, that he would talk "one way or the other" "before the night was over with," and that they "had ways of making [him] talk." Complaint, ¶ 24. Burge's involvement in the torture of dozens of African American men from 1972 to 1983, both directly and as a supervisor, created the environment where the torture of Plaintiff by Byrne and Dignan, at Burge's direction and under his supervision, was allowed to occur. All of this evidence is *Brady* material.

### III. Plaintiff's Failure to Intervene Claim in Count I is Sufficiently Pled

Defendants contend, in the absence of any supporting case law, that Plaintiff cannot maintain a failure to intervene claim against them because he "fails to identify the conduct that required intervention; whether defendants had knowledge of the illegal conduct, or whether these defendants had a realistic opportunity to prevent it." Defs. Br. at 18. This argument has no merit.

As described in Section I, above, Plaintiff alleges that Defendants Byrne, Dignan and Burge each caused and/or continued Plaintiff's wrongful charging, prosecution, conviction and imprisonment by committing one or more unconstitutional acts including physically coercing

and fabricating Plaintiff's false confession and withholding and suppressing exculpatory evidence. Complaint, ¶¶ 122, 127. Plaintiff further alleges that Defendants Byrne, Dignan and Burge each failed to intervene to stop one or more of the above stated acts despite having the opportunity and duty to do so. *Id.*, ¶¶ 123, 128.

These allegations are more than sufficient to allege a viable failure to intervene claim. *See, e.g., Starks v. City of Waukegan*, 946 F. Supp. 2d 780 (N.D. Ill. 2013) ("[Plaintiff] alleges that each of the Police Defendants participated in the fabrication of evidence against him . . . and that each knew that the others were doing so and failed to intervene to prevent those constitutional violations . . . Under *Yang* [*v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)], that plainly suffices to state a § 1983 claim for failure to intervene, since it is alleged that each officer knew that constitutional violations were being committed by other officers and could have prevented these violations but failed to do so."); *Jimenez v. City of Chicago*, 830 F. Supp. 2d 432, 451 (N.D. Ill. 2011) (failure to intervene and conspiracy claims against the individual police defendants who were personally involved in denying the plaintiff a fair trial were sufficient to survive summary judgment).

## IV. Plaintiff's Coercive Interrogation Claim is Timely

The Seventh Circuit has recently ruled that where, as here, examination of the criminal proceedings reveals that the allegedly coerced confession was a basis for a conviction or sentence, the cause of action for the coerced confession does not arise until the conviction or sentence is reversed, expunged, invalidated, or otherwise called into question, since success on that claim would necessarily imply the invalidity of the conviction or sentence. *Matz v. Klotka*, 769 F.3d 517 (7th Cir. 2014). Thus, in this case, Plaintiff's coerced confession claim did not accrue until his conviction was vacated in September of 2015. Since the limitations period for §

1983 suits in Illinois is two years, this suit, filed in March 2016, is clearly timely. *See, e.g.,*
*Taylor v. City of Chicago*, 80 F. Supp. 3d 817, 826 (N.D. Ill. 2015) (plaintiff's allegations in his
complaint "that the Defendant Officers coerced him into making self-incriminating statements
and these statements were later used during the criminal proceeding to convict him," such that
"his conviction rested largely on the unconstitutional use of these coerced statements at trial"
were sufficient to justify application of *Heck's* deferred accrual rule so as to defeat a motion to
dismiss the claim as untimely); *Saunders v. City of Chicago*, 146 F. Supp. 3d 957 (N.D. Ill. Nov.
17, 2015) (plaintiff's coerced confession claim was subject to deferred accrual under *Heck*
because he "has adequately pled that his false confession played a significant-enough role in his
criminal proceeding such that the invalidity of his confession necessarily implies the invalidity of
Plaintiff's conviction."); *Phillips v. City of Chicago*, 2015 U.S. Dist. LEXIS 127923, 2015 WL
5675529, at *3-4 (N.D. Ill. Sept. 24, 2015) (adopting *Taylor's* rationale in holding that coerced-
confession claims were subject to deferred accrual under *Heck* because the plaintiffs "adequately
pleaded the significance of their confessions at trial"); *Rivera v. Lake County*, 974 F. Supp. 2d
1179, 1188 (N.D. Ill. 2013) ("*Wallace's* accrual rule does not trump the *Heck* bar in the coercive
interrogation context where 'the plaintiff's conviction rested largely upon the allegedly coerced
[confession].'" (quoting *Tillman*, 813 F. Supp. at 970-71).

Defendants attempt to get around *Heck's* deferred accrual rule by claiming that "there
was other significant evidence to support plaintiff's conviction—the eyewitness testimony of
Glenda Cobb." Defs. Br. at 20. This argument fails for at least two reasons.

*First*, *Matz* makes clear that the allegedly coerced statement does not have to be the *sole*
basis for the conviction or sentence in order for the *Heck* bar to apply. In *Matz*, there was
evidence that Matz's "fellow Latin Kings had inculpated him in the crime," yet the Court held

15

that the claim based on the allegedly coerced statement was still barred by *Heck*. Matz, 769 F.3d at 531; *see also Harris v. City of Chicago*, 2015 U.S. Dist. LEXIS 34835 (N.D. Ill. Mar. 19, 2015) (rejecting a similar argument as that made here, finding: the videotaped confession was 'by far the most damning evidence [and the] the largest determining factor of Plaintiff's conviction; therefore, the claim was barred by *Heck* until Plaintiff's conviction was vacated. Plaintiff's claims are not time-barred by the statute of limitations.") (internal citations and quotes omitted). Thus, Plaintiff has adequately pled that his coerced confession played a significant-enough role in his criminal proceeding such that the invalidity of his confession necessarily implies the invalidity of Plaintiff's conviction. *See* Complaint, ¶ 67 ("Plaintiff's coerced and fabricated confession was presented as the chief piece of incriminating evidence against him at trial.").

Second, even if Defendants were correct that a coerced confession must be the *sole* basis for a plaintiff's conviction in order for a Fifth Amendment claim to be tolled by *Heck*, their argument would still fail because, as explained in footnote 1 above, the Glenda Cobb "facts" that Defendants cite as other evidence supporting Plaintiff's conviction, should be disregarded by the Court because they are not contained in the complaint and are not properly subject to judicial notice since the circumstances surrounding Cobb's identification of Plaintiff as the murderer are disputed. *See* Fed. R. Evid. 201(b).

## V. Plaintiff's Fabrication Claim is Sufficiently Pled

In Count I of his complaint, Plaintiff asserts a fabrication of evidence claim separate from and in addition to his *Brady* claims. *See Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012). Defendants contend that Plaintiff's fabrication of evidence claim is not sufficiently pled because the complaint is "devoid of any facts that establish Defendant Officers knew that his confession

16

was false." Defs. Br. at 20. Defendants assert that Plaintiff's claims here are the same as the claims rejected by the Seventh Circuit in *Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014). This argument distorts the holding of *Petty* and the allegations of Plaintiff's complaint.

In *Petty*, the court held that the plaintiff had failed to allege or establish that the defendants had intentionally fabricated evidence, noting that the plaintiff merely alleged that the defendants "knew or should have known," that a witness's statements were false, and that "[t]here is not one shred of evidence to suggest that CPD officers fabricated evidence, which would have been a due process violation." *Petty*, 754 F.3d at 423. Here, on the other hand, the complaint not only sufficiently alleges that the coerced evidence was false, but also was known to the Defendants to be false because they were responsible for manufacturing the confession. *See, e.g.,* Complaint ¶¶ 30-43 (describing how Dignan and Byrne physically coerced and tortured Plaintiff until he agreed to tell them what they wanted to hear); ¶ 44 (Dignan and Byrne told Plaintiff what to say and he repeated it back to them); ¶¶ 65, 122 (Dignan and Byrne knew the confession was false); ¶ 125 (the misconduct of Dignan and Byrne was undertaken intentionally and with malice). Plaintiff is not alleging that the Defendants "should have known" that the evidence was unreliable or wrong, he is alleging that the Defendants deliberately fabricated evidence they knew was false. Thus, *Petty* supports Plaintiff's claims since has alleged deliberate fabrication of inculpatory evidence, which, *Petty* acknowledges, is an actionable due process violation.

## VI.    Plaintiff's Conspiracy Claims Should Not be Dismissed

Plaintiff has alleged a claim under § 1985 for conspiracy to deprive Plaintiff and other African American victims of Area 2 torture of the equal protection of the laws; a derivative § 1986 claim for failure to prevent the § 1985 conspiracy claim; and a state law conspiracy to

violate Plaintiff's rights under Illinois law. Defendants assert that to the extent that Plaintiff's other constitutional claims fail, those same allegations cannot support the derivative conspiracy claims. Defs. Br. at 24. Because the substantive claims should not be dismissed for the reasons discussed above, the conspiracy claims should not be dismissed on that basis. Defendants also erroneously argue that Plaintiff has not pleaded his conspiracy claims with sufficient particularity. Defs. Br. at 22-23.

A § 1985 conspiracy claim may be brought when "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). "To state such a claim, plaintiff must allege a conspiracy, a purpose of depriving a class of persons of equal protection of the laws, an act in furtherance of the conspiracy, and an injury to plaintiff or a deprivation of his civil rights or privileges." *Tillman*, 813 F. Supp. 2d at 977 (citing *Indianapolis Minority Contractors Ass'n Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999)). Section 1986 provides for liability for an individual who knows that actions prohibited by Section 1985 are about to occur, and with "reasonable diligence could have prevented" them, but either neglected or refused to do so. 42 U.S.C. § 1986. To satisfy Rule 8's pleading standards for conspiracy claims, a complaint need only include plausible allegations of a conspiracy to violate Plaintiff's constitutional rights. *See Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) ("While the complaint makes only rather conclusory direct allegations of conspiracy, the complaint also alleges a pattern of harassment by several officers over a period of months. It is a challenge to imagine a scenario in which that harassment would not have been the product of a conspiracy. Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy. This complaint goes well beyond that."); *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 895 (1995) (the nature of conspiracies,

18

"shrouded in mystery," prohibits a plaintiff from pleading all the details of the conspiracy with particularity). The Seventh Circuit requires the Plaintiff provide sufficient notice to allow a defendant to respond by alleging (a) the parties involved in the conspiracy; (b) the general purpose of the conspiracy; and (c) the approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006).

Plaintiff's complaint includes far more detail than is required to satisfy the pleading standard set forth in *Loubser*, *Geinosky* and *Adcock*. *First,* Plaintiff has sufficiently alleged the parties involved in the conspiracy—*i.e.,* Defendants Burge, Byrne, Dignan, the Municipal Defendants (Martin, Shines, Hillard and Needham), the State's Attorney Defendants (Kelly and Daley),[4] and certain unsued co-conspirators. *See* Complaint, ¶¶ 93, 118. *Second,* Plaintiff's complaint sufficiently alleges that the specific purpose of the conspiracy was to deprive Plaintiff, who is African American (and numerous other African American torture victims) of his constitutional rights, including his right to be free from unreasonable arrest, seizure, wrongful confinement and imprisonment and the excessive use of force, to be free from involuntary self-incrimination and from interrogation techniques that "shock the conscience," to access to the courts and to a fair and impartial trial, and to equal protection of the law. *Id.* ¶¶ 93, 118, 121-22, 127, 133-34.[5] *Third,* Plaintiff also sufficiently alleges the approximate dates of the conspiracy: from its earliest inception by Burge and other Chicago Police detectives in 1973 (Complaint, ¶ 72) to 1982 when Daley joined the conspiracy, (*id.*, ¶ 73-86) to the time of Plaintiff's interrogation and torture—April 1983 (*id.*, ¶¶ 22-50)—until (at least) the time of Plaintiff's

---

[4] Daley is also being sued in his role as Mayor of the City of Chicago.

[5] The more general purpose of the conspiracy, as pleaded, was, as a matter of pattern and practice, to torture false confessions from African American suspects at Area 2 and later at Area 3, in order to obtain wrongful convictions. *See, e.g,* Complaint, p. 14 "The Conspiratorial Pattern and Practice of Torturing and Abusing Suspects at Area 2 and Area 2 Police Headquarters and to Conceal and Cover Up the Torture and Abuse."

19

exoneration in October 2015. *Id.*, ¶¶ 87-117. *Fourth*, Plaintiff alleges that the decades long

conspiracy is fundamentally premised on, and permeated by, powerful racial animus. The

complaint on numerous occasions alleges that the Defendants and their co-conspirators engaged

in a pattern of torture and abuse directed exclusively against African Americans, and specifically

identifies more than eighty of these African American victims, all of whom were convicted on

the basis of tortured confessions, with a substantial number being sent to death row.[6]

In support of their argument, Defendants rely on *Wrice v. Burge*, 2015 U.S. Dist. LEXIS

129628 (N.D. Ill. Sept. 25, 2015), where Judge Bucklo granted the defendants' motion to dismiss

similar conspiracy allegations as those made here. The basis of the court's ruling in *Wrice* was

that "the complaint is devoid of facts suggesting that all nine Defendants agreed to conceal [the

pattern and practice of torture] from Wrice in an effort to secure or sustain his conviction." *Id.* at

30-32. Plaintiff submits that Judge Bucklo's ruling was in error because it failed to recognize that

the plaintiff had alleged at least two independent conspiracies—the first one involving Byrne,

Dignan and the State's Attorney who were all alleged to have acted initially in securing Wrice's

conviction in violation of his due process rights, and the second one involving Daley, Martin,

Shines, Hillard and Needham, who were all alleged to have acted later in sustaining his

conviction in violation of his due process rights—which therefore did not require the agreement

of all nine defendants. *See Tillman*, 813 F. Supp. 2d at 989-90 (noting that the "Seventh Circuit

has recognized numerous conspiracies aimed at covering-up prior illegal actions. (In many

instances, these were considered two independent conspiracies, as they may well be here."

(citing *Hampton v. Hanrahan*, 600 F.2d 600, 622 (1979)). Here, Plaintiff has sufficiently alleged

that Byrne, Dignan, Burge, and Kelly, acting jointly and in conspiracy with each other, agreed to

---

[6] *See* Complaint, ¶¶ 72, 74, 76.

wrongfully secure his conviction, and that Daley, Martin, Shines, Hillard and Needham, acting jointly and in conspiracy with each other, agreed to wrongfully sustain his conviction. Contrary to the ruling in *Wrice*, Plaintiff is not required, especially at the pleading stage, to show an agreement between all nine Defendants, in order to maintain his conspiracy claims.

It is therefore clear the Defendants have not presented any grounds for dismissal of any of the conspiracy claims in the complaint.[7] *See Tillman*, 813 F. Supp. 2d at 977-78 (finding the plaintiff's conspiracy claims, which are essentially identical to those alleged here, to be sufficient at the pleading stage); *Kitchen*, 781 F. Supp. 2d at 737-38 (same).

## VII.   Defendants Are Not Entitled to Qualified Immunity

A dismissal based on qualified immunity is rarely appropriate at the motion to dismiss stage and is certainly not appropriate in this case. "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal." *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring). This is because all a plaintiff must do to state a claim under § 1983 is allege that a person acting under color of state law has deprived him of a federal right, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); and the Supreme Court has warned that lower courts may never alter this basic pleading requirement of § 1983 claims simply because a defendant asserts a qualified immunity defense, *Crawford-El v. Britton*, 523 U.S. 574, 594-97 (1998); *see also Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity."). So long as the complaint satisfies Rule 8 with respect to both elements of a § 1983 claim, dismissal is inappropriate.

---

[7] Plaintiff's properly pleaded § 1985 conspiracy, together with the allegations found in the Complaint at ¶ 135, also make out a sufficient § 1986 claim.

21

Plaintiff's complaint easily satisfies this standard. Defendants Byrne, Dignan and Burge are all state actors and none of them argue otherwise. And, as described above, Plaintiff's complaint provides detailed allegations of how Defendants, knowing that he was innocent, framed him for murder by torturing him and physically coercing him into giving a false confession; providing the false confession to prosecuting attorneys for their use in his criminal prosecution; and withholding exculpatory evidence. Because it has been clearly established since long before 1983 that coercing a confession, fabricating inculpatory evidence, and suppressing material exculpatory and impeaching evidence to deprive someone of their liberty is unconstitutional, as shown, *inter alia,* by the all of the cases cited above, Defendants' qualified immunity argument fails. *See, e.g., Mooney v. Holohan*, 294 U.S. 103 (1935); *Pyle v. Kansas*, 317 U.S. 213 (1942); *Napue v. Illinois*, 360 U.S. 264 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963); *U.S. v. Bagley*, 473 U.S. 667 (1985); *Jones v. City of Chi.*, 856 F.2d 985 (7th Cir. 1988).

## VIII. Plaintiff's Malicious Prosecution Claim is Sufficiently Pled

To state a claim for malicious prosecution, Plaintiff "must allege facts showing: (1) the commencement or continuance of an original criminal or civil judicial proceedings by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996) (internal citation and quotation marks omitted). Defendants assert that Plaintiff has not sufficiently pled the second, third and fourth elements.

With regard to the probable cause and malice elements, Defendants' arguments fail because they again hinge on disputed facts concerning Glenda Cobb which are not contained in the complaint and are not properly subject to judicial notice. Plaintiff's complaint sufficiently

22

alleges that the criminal proceeding was commenced and continued based on the tortured confession, which was obviously done with malicious intent and cannot form the basis of probable cause.

Defendants also assert that Plaintiff has failed to sufficiently allege that the underlying proceedings terminated in his favor because he does not include the phrase "indicative of innocence" in the complaint. This argument again misunderstands the federal system's notice-pleading (rather than fact-pleading) regime, under which Plaintiff must simply provide adequate notice of his claims. Plaintiff's complaint alleges that pursuant to his post-conviction petition, and after a full evidentiary hearing, Circuit Court Judge Erica Reddick found that Plaintiff had been tortured and physically abused to give a confession and vacated his conviction, and granted him a new trial, and that the prosecution subsequently dismissed all charges against Plaintiff, thereby terminating the criminal proceedings in his favor. Complaint, ¶¶ 115-117. These facts clearly raise Plaintiff's right to relief above a "speculative level." *See Twombly*, 550 U.S. at 555. There is no merit to Defendants' position that by failing to explain the basis for the State's decision to dismiss the charges, Plaintiff has somehow failed to plead successfully that the proceedings were terminated in his favor. This type of argument must wait until the evidentiary record is fully developed. *See, e.g., Neiman v. Vill. of Deerfield*, 2015 U.S. Dist. LEXIS 171290, *7 (N.D. Ill. Dec. 22, 2015) ("The method of dismissal is not necessarily dispositive of a malicious prosecution claim; what matters is whether the criminal proceeding was dismissed in a manner indicative of innocence. *See Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) (directing courts to consider whether 'the *nolle prosequi* was entered for reasons consistent with . . . innocence'). That determination can be made only after further factual development."); *Engel v. Buchan*, 791 F. Supp. 2d 604, 610-11 (N.D. Ill. 2011) (same).

**IX.     Plaintiff's Intentional Infliction of Emotional Distress Claim is Timely**

Defendants rely on *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013) to argue that Plaintiff's claim for intentional infliction of emotional distress (IIED) is untimely, since it accrued at the time of his arrest, not at the time of his exoneration. In doing so, they ignore *Parish v. City of Elkhart*, 614 F.3d 677, 684 (7th Cir. 2010). This case falls squarely within the four corners of the holding of *Parish*, while *Bridwell* is critically different.

In *Parish,* the Seventh Circuit held that where an IIED claim is based on an allegedly wrongly obtained *conviction*, such a suit would imply the invalidity of the conviction, and thus, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), could not be brought until the conviction was finally reversed and determined in favor of the plaintiff. In *Parish,* a case from Indiana, the Seventh Circuit found that Indiana had adopted the rule of *Heck* for determining the date of accrual of claims arising out of allegedly wrongful convictions.

Illinois has also adopted the rule of *Heck* in determining the accrual date of claims based on allegedly wrongful convictions, holding that a civil suit cannot be used as a collateral attack on a criminal conviction and that "if [a plaintiff] makes allegations that are inconsistent with the convictions having been valid, *Heck* kicks in and bars his civil suit." *Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1112 (4th Dist. 2011) (internal citations omitted). Thus, in *Lieberman,* the court barred plaintiffs from bringing a civil action for malpractice against doctors for misdiagnosing them as being sexually violent persons because this would be inconsistent with their lawful confinement as sexually violent persons, holding:

> In this case, plaintiffs are attempting to collaterally attack their lawful confinement by alleging medical malpractice in their SVP diagnoses without challenging their underlying confinement. Clearly, a successful claim would be inconsistent with their lawful commitments. The adoption of the *Heck* scheme here avoids the inconsistent effect of awarding money damages for unlawful detention to lawfully confined plaintiffs. Such a result is also consistent with a

24

long-standing judicial policy of avoiding conflicting judgments. While plaintiffs maintain any award would not necessarily imply the invalidity of their continued confinement, "[i]t is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the convictions having been valid, Heck kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

*Id.* at 1112. Thus, Plaintiff's claims which implied that Defendants' wrongful acts caused his conviction and imprisonment would be barred under *Lieberman* while the criminal convictions remained extant. Only after those convictions were vacated did the IIED claim become timely. *See also Starks v. City of Waukegan*, 946 F. Supp. 2d 780 (N.D. Ill. 2013); *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738 (N.D. Ill. 2012).

*Bridewell* is a case where the only alleged wrongdoing was the plaintiff's arrest and the initiation of the prosecution, not a malicious prosecution, and the case upon which *Bridewell* relied, *Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006), was also a case where there was no valid claim of a wrongful prosecution.[8] Here, on the other hand, Plaintiff has alleged that the Defendants continued to commit wrongdoing up until the time of the vacation of his conviction, since that wrongdoing prevented his more timely exoneration. Complaint, ¶¶ 2, 93, 115.

There is no question that in *Bridewell* the acts upon which the IIED claim were based were the defendants "arresting [plaintiff] and recommending her prosecution for murder." *Id.* at 678. The plaintiff was never convicted of the murder; after she was held in custody for three years she pled guilty to a separate drug charge and the murder charge was dismissed via a *nolle*

---

[8] In *Evans*, the plaintiff alleged that there were three separate wrongful prosecutions; however, these prosecutions had not terminated in favor of the plaintiff. There was one guilty verdict after trial, one plea of guilty and one prosecution with a negotiated dismissal in exchange for a guilty plea in another case. *Evans*, at 923. Thus, the plaintiff was unable to establish a vital component of a malicious prosecution claim.

The County Defendants also rely on *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) to argue Smith's claim for IIED is time barred, but this decisions, like *Bridewell*, is critically different because it did not involve a plaintiff who was wrongfully convicted and sentenced to prison. In *Brooks*, the Seventh Circuit held that where an IIED claim is based upon an *indictment* that was obtained through misconduct, the IIED claim accrues upon the issuance of the indictment, not the date of acquittal.

25

*prosequi*. Notably, the Seventh Circuit did not consider the *Parish* or *Lieberman* holdings in its *Bridewell* decision, and for good reason: in *Bridewell* there was never a conviction on the murder charge. Further, the IIED claim would never have been barred by Illinois' adoption of *Heck* for state law torts.

Here, in contrast to *Bridewell*, Plaintiff was convicted of murder, and has alleged that the Defendants' wrongdoing continued after his conviction, by their continued concealment of their coercion and fabrication of Plaintiff's confession and the pattern and practice of torture at Area 2, which prevented Plaintiff's more timely exoneration. Complaint, ¶¶ 2, 93, 115. Moreover, there is no doubt that if Plaintiff is successful in establishing this ongoing failure to reveal exculpatory evidence that existed at the time of trial, this constitutes a constitutional violation that continues after trial. *See Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007) ("We cannot accept . . . that *Brady* leaves state officials free to conceal evidence from reviewing courts or post-conviction courts with impunity, even if that concealment results in the wrongful conviction of an innocent person. It is worth recalling, in this connection, that the *Brady* rule was derived from the Due Process Clause of the Fourteenth Amendment. 'Society wins,' the Court wrote, 'not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.' 373 U.S. at 87.").

Thus, because *Bridewell* did not deal with an IIED claim that incorporated a malicious prosecution claim, because Plaintiff has alleged that Defendants' wrongdoing continued up until his exoneration, and because Illinois law would bar the IIED claim during the pendency of the criminal conviction, Plaintiff's IIED claim here, brought within a year of the vacation of his conviction, is timely.

**X.       Plaintiff's *Monell* Claim Should Not be Dismissed**

Defendant City of Chicago asserts that since Plaintiff's *Monell* claim is dependent on the federal claims asserted in Counts I and II, which, they argue, are subject to dismissal, then Plaintiff's *Monell* claim should likewise be dismissed. However, as explained above, Counts I and II are both viable and should not be dismissed. Therefore, Defendant City of Chicago's motion to dismiss Plaintiff's *Monell* claim should be denied.

Dated: August 22, 2016                    Respectfully submitted,

                                          /s/ Ben H. Elson
                                          Ben H. Elson
                                          Joey L. Mogul, G. Flint Taylor
                                          PEOPLE'S LAW OFFICE
                                          1180 N. Milwaukee Avenue
                                          Chicago, IL 60642
                                          (773) 235-0070

                                          Attorneys for Plaintiff Alonzo Smith