**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALONZO SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 3404 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| Former Chicago Police Department Commander | ) | Magistrate Judge Mary M. Rowland |
| JON BURGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF CHICAGO'S
MOTION TO BIFURCATE**

Plaintiff, through his undersigned attorneys, hereby responds in opposition to Defendant City of Chicago's Motion to Bifurcate Plaintiff's *Monell* Claim and Stay Expert Discovery and Trial on that Claim (Dkt. No. 196).

## INTRODUCTION

Faced with the predicament of having to mount a defense to Plaintiff's *Monell* claim concerning the pattern and practice of torture at Area 2 under disgraced former Police Commander Jon Burge—one of the worst scandals in the history of the Chicago police department—Defendant City asks this Court, in the midst of expert discovery, to bifurcate Plaintiff's *Monell* claim, stay expert discovery on the claim, and enter a proposed "Limited Consent to Entry of Judgment," thereby extinguishing the claim.

There is no persuasive justification for granting the City such extraordinary relief. A bifurcated trial is unnecessary to streamline trial proceedings or prevent prejudice to Defendants. Instead, the City's proposed course of action would likely prolong the case through the inefficiencies of two separate trials involving redundant evidence. Moreover, granting such relief

this late in the proceedings is highly prejudicial to Plaintiff who has already spent considerable time and resources formulating his *Monell* claim in fact discovery, retaining an expert and tendering his report.

As for the City's "Limited Consent to Entry of Judgment," pursuant to which it would deny liability but accept judgment against it if Plaintiff first establishes liability against the individual defendants, it is procedurally improper, offers Plaintiff nothing to which he is not already entitled, and, impermissibly seeks to eliminate Plaintiff's *Monell* claim without justification. This Court should deny the City's motion in full.

## BACKGROUND

Plaintiff Alonzo Smith spent approximately twenty years in prison, wrongfully convicted in 1984 of the home invasion, armed robbery, and murder of James Fullilove. Plaintiff's complaint alleges that he was physically coerced into confessing and that the principal and determinative evidence that was used to convict him at trial was his false, fabricated and coerced confession. In 2015, following a full evidentiary hearing, Cook County Circuit Court Judge Erica Reddick found that Plaintiff had been tortured into giving a confession, granted his post-conviction petition, vacated his conviction, and granted him a new trial; subsequently, the State of Illinois dismissed all charges against him.

The Chicago Police detectives who coerced Plaintiff's confession were Defendant Sergeant John Byrne and Defendant Detective Peter Dignan—the right hand men of disgraced former Chicago Police Commander Jon Burge, who was convicted and sentenced to federal prison for lying about the torture of suspects under his command. *See United States v. Burge*, 711 F.3d 803 (7th Cir. 2013). Plaintiff alleges that Byrne and Dignan, acting in concert with, and under the close supervision and monitoring of Burge—who was the supervising lieutenant in the

Fullilove investigation and who threatened Plaintiff by telling him, on two occasions, that he would talk "one way or another" "before the night was over with," and that they "had ways of making [him] talk"—subjected Plaintiff to extreme physical violence during his interrogation at Area 2. This included Byrne and Dignan taking him to the basement of Area 2, repeatedly suffocating him with a plastic bag, kicking him in the stomach and beating him about his body with a black rubber nightstick and flashlight, while using racist epithets and slurs. During discovery in this case, Defendants Burge, Byrne and Dignan did not deny any of these allegations; instead, they asserted their Fifth Amendment right against self-incrimination.

In addition to Burge, Byrne and Dignan, Plaintiff's complaint also names former Chicago Mayor Richard M. Daley, former Chicago Police Superintendents Leroy Martin and Terry Hillard, former Chicago Police legal counsel Thomas Needham, and former Police Officer of Professional Standards ("OPS") Director Gayle Shines, individually, and in conspiracy, as defendants and alleges that they share responsibility for Plaintiff's unjust imprisonment, since they knew of the pattern of police torture and physical abuse under Burge and concealed it—by action and inaction.

The complaint also seeks to hold liable the City of Chicago pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) based on three main theories: (a) Burge, Byrne and Dignan and other detectives under Burge's command engaged in a pattern and practice of torture with impunity to coerce confessions from suspects in violation of their constitutional rights amounting to a *de facto* policy, pattern and practice of physical coercion to obtain confessions and fabricate evidence; (b) the numerous occasions in which Burge, Byrne and Dignan coerced confessions from suspects was facilitated by a pervasive "code of silence" that also amounted to a *de facto* municipal policy, pattern and practice of engaging in physical abuse and fabrication of evidence;

and (c) the concealment of the pattern of torture under Burge by the defendant former Police Superintendents and Police executives, defendant former Mayor Daley and others, were the actions of official "policymakers" that bind the City under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); and *Vodak v. City of Chicago*, 639 F.3d 738 (7th Cir. 2011).

The *Monell* claim in this case raises a profoundly important issue: whether the City of Chicago is legally responsible for the actions of Jon Burge and his detectives because of the dereliction of high-level City policymakers—successive Superintendents of Police, Police executives and the former long-time Mayor of Chicago—who were repeatedly, both officially and unofficially, notified that Burge and his men were committing a pattern of horrific acts of abuse and either did nothing or actively worked to conceal the wrongdoing. In other words, the *Monell* claim seeks a finding that the City itself was a "moving force" of Plaintiff's interrogation abuse and his ongoing unjust imprisonment over the ensuing decades. *See Monell*, 436 U.S. at 694. The adjudication of the claim against the City is of great importance to Plaintiff, who contends that the miscarriage of justice he endured was not solely the work of the torturers on the ground but was also caused by the indifference, inaction, and ratification of high City officials.

## ARGUMENT

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The burden is on the proponent of bifurcation to justify that relief. *See Caterpillar, Inc. v. Deere & Co.*, 1997 WL 17798, at *1 (N.D. Ill. Jan. 14, 1997). Bifurcation is the exception, not the rule, and separate trials should not be ordered "unless such a disposition is clearly necessary." *Real v.*

*Bunn-O-Matic Corp.*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *see also* Fed. R. Civ. P. 42, Advisory Comments ("[S]eparation of issues for trial is not to be routinely ordered[.]"). The moving party "has the burden of showing that judicial economy would be served and the balance of potential prejudice weighs in favor of bifurcation." *Trading Technologies Intern., Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 836 (N.D. Ill. 2006). "When determining whether to bifurcate discovery and trial, the Court 'must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case.'" *Estate of Loury v. City of Chi.*, 2017 WL 1425594, at *2 (N.D. Ill. Apr. 20, 2017) (St. Eve, J.) (quoting *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008)).

The City makes two primary arguments in favor of bifurcation: (1) efficiency and judicial economy would be served by bifurcation because it may allow the parties to avoid expert discovery and a lengthier trial related to the *Monell* claim; and (2) the balance of potential prejudice weighs in favor of bifurcation since Plaintiff's monetary recovery would not be increased if he prevailed on his *Monell* claim. Plaintiff shows below that each argument is faulty and must be rejected.

## I. Efficiency and Judicial Economy Favor a Unitary Expert Discovery Process and Trial

The City contends that bifurcation will serve the interests of efficiency and judicial economy because: (1) the presentation of Plaintiff's *Monell* claim "would take months to try" and "would entirely subsume any trial on the merits of Plaintiff's specific claims of abuse"; (2) there is a "significant risk" that Plaintiff will lose his coerced confession claim against Burge, Byrne and Dignan and therefore "the Court would have wasted many months and many hours of time trying a *Monell* claim on which Plaintiff could not prevail as a matter of law"; and (3)

5

bifurcation will save the parties from spending time and resources on *Monell* expert discovery. Each of these arguments is without merit.

### A. Plaintiff's Presentation of His *Monell* Claim at Trial Will Be Short and Streamlined

The City's hyperbolic speculation concerning the length and complexity of trial if bifurcation is not granted is highly exaggerated and unsupported. While it is true that a tremendous amount of evidence exists concerning the pattern and practice of torture at Area 2 under Burge, Plaintiff will be able to distill from that evidence a focused and short presentation of the *Monell* claim that will not consume an excessive amount of trial time. Plaintiff's presentation will include principally admissions from City officials, judicial and administrative findings, testimony regarding a handful of key events involving policymakers, and the testimony of a small number of other victims of Burge, Byrne and Dignan. Plaintiff will also call a police practices expert to testify about the existence of the alleged policies and practices and how a municipality and its policymakers might appropriately have responded after the policymakers learned of the pattern of torture and physical abuse, which will greatly streamline the presentation.[1]

The City's assertion that the *Monell* claim will take "months" to try is particularly absurd given the fact that the Court, not the parties, determines the length of trial. Plaintiff will have to decide how much trial time to devote to his *Monell* evidence within the confines of the trial schedule set by the Court, which, presumably, will be weeks, not months. Not only will this evidence be presented succinctly, but most of it would be admissible even without the *Monell*

---

[1] Plaintiff's expert, Richard Rosenthal, a retired NYPD lieutenant and Chief of Police in Wellfleet Massachusetts, has already formulated his opinion, focused on the pattern and practice of Area 2 torture, its racist nature, the CPD code of silence, and the failure to discipline the torturers, and the opinion has been tendered to Defendants' counsel.

claim. *First*, the victim witnesses who will testify concerning the torture they endured would be called pursuant to Fed. R. Evid. 404(b) even if the *Monell* claim were not in the case.[2] *See Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) (other acts of torture and abuse by Jon Burge and his men admissible under Rule 404(b)). *Second*, evidence against the individual policymaking Defendants—*i.e.*, Daley, Martin, Shines, Hillard and Needham—will obviously be admissible to show those defendants' individual and conspiratorial liability, even in the absence of a *Monell* claim against the City.

In short, the City's argument that efficiency and judicial economy would be furthered by granting their motion is grossly exaggerated. To the contrary, holding two separate trials on such closely related issues would multiply the proceedings, impose huge additional costs on the parties, and inconvenience the witnesses. These factors weigh heavily in favor of denying bifurcation.

### B.     A Unified Trial Would Conserve Not Waste Judicial Resources

The City warns of a "significant risk" that judicial resources will be "wasted" on Plaintiff's *Monell* claim if bifurcation is not granted and Plaintiff loses his coerced confession claim against Burge, Byrne and Dignan at trial. Although the City's argument that separate trials would promote judicial economy if the individual defendants prevail in the first trial is true, it has not demonstrated that such success is likely. In fact, the likelihood of Plaintiff losing all of his claims, particularly his coerced confession claim, against Burge, Byrne and Dignan is extremely low considering the fact that these defendants have not even denied Plaintiff's

---

[2] The City asserts, without any explanation or citation to authority, that Plaintiff may somehow be "*collaterally estopped*" from calling victim witnesses who "have filed their own lawsuits." City Br. at 9-10. This baseless argument is perfunctory and undeveloped and should be deemed waived. *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *Patel v. Zillow, Inc.*, 2018 WL 2096453, at *6 (N.D. Ill. May 7, 2018) (St. Eve, J.).

allegations, but have instead asserted their Fifth Amendment rights against self-incrimination, which allows the trier of fact to take an adverse inference. *See Baxter v. Palmigiano,* 425 U.S. 308 (1976). Thus, the City's logic is turned on its head—since the likelihood of Plaintiff winning at least his coerced confession claim is extremely high, there is a "significant risk" that bifurcation would not serve judicial economy because it would necessitate two separate trials with two separate juries at remote times involving overlapping evidence. *See, e.g., Houskins v. Sheahan*, 549 F.3d 480, 496 (7th Cir. 2008) (affirming a district court's decision not to sever claims against two defendants because those claims clearly entailed "an overlap in the facts, evidence, and witnesses required").

### C. Bifurcation Will Not Save the Parties From Spending Time and Money on Expert Discovery

The City's argument that bifurcation would save the parties time and money on expert discovery is also unavailing. Plaintiff has already expended a significant amount of time and money on a *Monell* expert whose opinion was disclosed on July 24, pursuant to the Court's deadline. If the City was serious about making this argument, it should have filed the instant motion far sooner than seven business days before the due date of Plaintiff's *Monell* expert disclosure. Furthermore, as explained in the previous sections, delaying the remainder of expert discovery until after the trial of Plaintiff's claims against the individual defendants would likely result in an unnecessary multiplication of the proceedings.

Although every defendant would prefer to avoid the costs of litigation, such considerations do not relieve the City of its obligation to defend against a valid *Monell* claim and participate in the legal process like any other defendant.

## II.      Considerations of Prejudice to the Parties Counsel Against Bifurcation

The City's contention that there is nothing to be gained from litigation of Plaintiff's *Monell* claim is flawed. In fact—completely independent of any direct financial benefit to Plaintiff—there are vitally important objectives of deterrence and reform that would be furthered by a judgment holding the City liable, once and hopefully, for all, for the criminal misconduct of Burge, Byrne and Dignan. In this case, Plaintiff contends that, for decades, high City officials closed their eyes to the Burge scandal, actively worked to cover it up and thereby facilitated, enabled, and ratified Burge and his co-conspirator's continued egregious wrongdoing. Now, in this case, and in the face of all the incontrovertible evidence, the City continues to stubbornly deny this contention. *See* City Answer to Complaint, Dkt. 82, ¶¶ 71-119. Plaintiff believes that a jury verdict holding the City liable for what happened to him—not derivatively, as in a *respondeat superior* case, but directly so, because Burge, Byrne and Dignan acted pursuant to and were facilitated in their misconduct by policies and practices of the City itself—would operate powerfully to alter the City's decades of litigational denial and avoidance. Thus, the role that official indifference, complicity, and concealment played in Plaintiff's conviction and decades of wrongful imprisonment is a central dispute in this case. Plaintiff is entitled to have that dispute adjudicated—not for abstract reasons, but because the adjudication will vindicate him for the violation of his rights by all responsible parties and because a judgment against the City has the unique potential to achieve deterrence and reform.

The Supreme Court recognized the independent importance of a *Monell* claim against a municipality in *Owen v. City of Independence*, 445 U.S. 622 (1980), which held that the defendant municipality could be held liable for its unconstitutional policies even when the individual municipal defendants were adjudged to have qualified immunity. In denying a

qualified immunity defense to the city, the Supreme Court relied upon the important deterrent effect of a § 1983 action, and underscored the special importance such deterrence plays when the defendant is a municipality:

> [§ 1983] was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations . . . . The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights.

*Owen*, 445 U.S. at 651-52. The Court made this further observation, which applies with particular force here:

> How "uniquely amiss" it would be, therefore, if the government itself—"the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment, and the setting of worthy norms and goals for social conduct"—were permitted to disavow liability for the injury it has begotten. *See Adickes v. Kress & Co*., 398 U.S. 144, 190 (1970) (opinion of BRENNAN, J.). A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed.

*Id.* at 651.

Many courts in this district, including this Court, have found that, "even if there are no financial benefits to maintaining a *Monell* action, there are other critical reasons the plaintiff may wish to win a judgment against a municipality on her *Monell* claim, even if she has already won a judgment against individual officers and the municipality has consented to judgment." *Estate of Loury*, 2017 WL 1425594, at *5 (denying City's bifurcation motion, finding that "Plaintiff has other important objectives—most notably, deterrence and reform—that would be furthered by a judgment holding the City liable for the Defendant Officers' misconduct," and recognizing "Plaintiff's legitimate interests in obtaining a *Monell* judgement against the City and the fact that Plaintiff is the master of her complaint"); *Estate of McIntosh v. City of Chi.*, 2015 WL 5164080,

at *10 (N.D. Ill. Sep. 2, 2015) (St. Eve, J.) (same); *King v. Evans*, 2015 WL 4397761, at *2 (N.D. Ill. July 17, 2015) (explaining that a successful *Monell* action may "have the [legitimate] benefit of deterring future official misconduct . . . even if it results in an award of only nominal additional monetary damages"); *Giles v. Ludwig*, 2013 WL 6512683, at *3 (N.D. Ill. Dec. 6, 2013) ("mere monetary compensation for constitutional injuries may not have the same deterrent effect as a judgment naming the municipality as responsible based on its policies and customs"); *Cadiz v. Kruger*, 2007 WL 4293976, at *10 (N.D. Ill. Nov. 29, 2007) (denying motion for bifurcation due to importance of proving that a municipality has unconstitutional policies, practices, or customs); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. June 16, 2000) (noting that there are non-economic benefits plaintiffs can obtain from suing a municipality instead of an individual officer). Furthermore, "[a]llowing Plaintiff to proceed on all of his theories allows a jury to see the entire picture of what Plaintiff claims Defendants did that violated the law and caused him injury in this case." *Cadle v. City of Chi.*, 2015 WL 6742070, at *4 (N.D. Ill. Nov. 2, 2015).

On the other hand, the City's assertion that the individual defendants will suffer undue prejudice form a unitary trial on Plaintiff's claims is untrue. Significantly, the individual defendants have not joined in the City's motion to bifurcate or asserted that they will suffer prejudice in a unitary trial. In any event, the City incorrectly assumes that other incidents of police torture not directly involving Burge, Byrne and Dignan will be introduced at trial, with the result that the jury would find against these defendants because of the evidence of other officers' misconduct.

As explained above, Plaintiff will not attempt to prove his *Monell* claim with a lengthy parade of torture victims. There will be only a small number of such victims. Moreover, Plaintiff

will limit the other-victim testimony to victims of Defendants Burge, Byrne and Dignan. These other victims would be called as Rule 404(b) witnesses against these particular defendants even without the *Monell* claim.

Plaintiff's other *Monell* evidence will consist of proof that high ranking Police and City officials were on notice of the pattern of abuse and torture under Burge and failed to act. Like the other-victim evidence, much or all of this evidence would be admissible for Plaintiff's individual and conspiracy claims against Defendants Daley, Martin, Hillard, Needham and Shines even if the *Monell* claim were not also on trial.

To the extent that any minimal unfair prejudice might arise, it can be effectively addressed through the use of limiting instructions. Federal Rule of Evidence 105 directs the district court to provide instructions to the jury "restrict[ing] the evidence to its proper scope." Limiting instructions are an effective tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow them. *See McLaughlin v. State Farm Mut. Auto Ins. Co.*, 30 F.3d 861, 870-71 (7th Cir. 1994) (no need to bifurcate to avoid prejudice where it is presumed jury could follow limiting instruction on how to consider evidence); *United States v. James*, 487 F.3d 518, 524 (7th Cir. 2007) (presumption that juries follow instructions is rebuttable but very strong); *Terrell v. Childers*, 1996 WL 385310, at *14 (N.D. Ill. July 3, 1996) (rejecting argument that prejudicial evidence against one defendant would "spill over" onto others because court "will not try the case with the notion that jurors will not faithfully undertake their obligations"); *Nat'l Union Fire Ins. Co. v. Dowd & Dowd*, 191 F.R.D. 566, 567 (N.D. Ill. 1999) ("[A] properly instructed jury will be able to follow and absorb the testimony of a carefully-organized—albeit longer—trial of the entire matter" where the facts were not particularly complex). "As several courts in this district have noted, any potential prejudice that

12

might arise from a unitary trial can be mitigated through the use of limiting instructions, motions in limine, and the Rules of Evidence." *Giles*, 2013 WL 6512683, at *2 (citing *Elrod v. City of Chicago*, 2007 WL 3241352, at *7 (N.D. Ill. Nov. 1, 2007); *Medina*, 100 F. Supp. 2d 893 at 897; and *Nessel v. City of Northlake*, 1994 WL 685508, at *2 (N.D. Ill. Dec. 5, 1994)); *see also Marshbanks v. City of Calumet City*, 2015 WL 1234930, at *5 (N.D. Ill. Mar. 16, 2015) (St. Eve, J.) ("Calumet City's argument that the evidence against Calumet City will prejudice Defendant Officers is best cured by proper jury instructions and pre-trial evidentiary challenges"); *Cadle*, 2015 WL 6742070, at *3 (N.D. Ill. Nov. 2, 2015). Courts in this district have historically tried similar *Monell* claims in significant civil rights § 1983 cases starting with *Jones v. City of Chicago*, 856 F.3d 985 (7th Cir. 1988) and *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993), and continuing to the present with *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.) and *Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill.).[3]

The City has failed to meet its burden of demonstrating that any prejudice to the individual defendants from a joint trial of the *Monell* claims could not be readily cured through the use of jury instructions.

**III.    The City's Proffered "Limited Consent to Entry of Judgment" Is Procedurally Flawed, Offers Plaintiff No Benefit, and Strips Plaintiff of the Reformatory Benefits of His *Monell* Claim**

If this Court grants bifurcation, the City proposes a "Limited Consent to Entry of Judgment" that it contends would guarantee that Plaintiff will receive any awarded compensatory damages if a jury finds that his constitutional rights were violated. Thus, according to the City,

---

[3] The City's reliance on *Kitchen v. Burge* is misplaced as the court in *Kitchen* was focused in large part on the benefits of bifurcating *Monell* fact discovery, which is not at issue here; Plaintiff's *Monell* evidence since *Kitchen* was decided has become more focused and incontrovertible; and in *Kitchen* three of the four main individual torturer defendants—detectives Kill, Byron and Smith—all testified and denied Kitchen's torture allegations as opposed to asserting the Fifth Amendment as the main individual defendants have done in this case.

the proposed Limited Consent negates the need for a second trial on the *Monell* claim. This Court should reject the City's proffered "Limited Consent to Entry of Judgment." First, it is not contemplated by the Federal Rules of Civil Procedure and is therefore procedurally deficient. Certainly, the proposed Limited Consent is not an unconditional Rule 68 offer of judgment because it fails to stipulate to a single fact rather than admitting that its policies and practices directly caused Plaintiff's constitutional deprivations. Indeed, the Limited Consent affirmatively disclaims any liability or culpability for Plaintiff's injuries. Nor does the proposed Limited Consent constitute a Rule 16 stipulation agreed upon by the parties, as Plaintiff emphatically rejects it.[4] Finally, the City's proposed Limited Consent is not a permissible responsive pleading pursuant to Rule 7(a). *See* Fed. R. Civ. P. 7; *Haven v. Polska*, 215 F.3d 727, 732 (7th Cir. 2000). No basis in law therefore exists to use the City's proffered document to deny Plaintiff his right to litigate what is undeniably a viable *Monell* claim.

Second, the City's proposed Limited Consent gives Plaintiff nothing to which he is not already entitled. State law already requires the City to indemnify any compensatory damages judgments incurred by its police officers for conduct within the scope of their employment, and there is no dispute in this case concerning scope of employment. The City therefore seeks to extinguish Plaintiff's meritorious *Monell* claim on nothing more than a promise to honor its previously existing statutory and contractual obligations to satisfy a judgment against its employees. *See Giles*, 2013 WL 6512683, at *3 n.1 (rejecting the City's proposed Limited Consent as an impermissible "attempt[] to circumvent the public policy goals of *Monell* claims

---

[4] Plaintiff would consider agreeing to a Stipulation that the City, on, before and after January of 1983, had a pattern and practice of torture and abuse under Burge, as well as a widespread police code of silence, (both of which the city, through its policymakers has previously admitted to) leaving to the jury only the even more limited question of causation.

by insulating the City from litigating and accepting responsibility if their practices result in constitutional injuries.").

Although courts in this district have accepted similar proposals from the City as a means for guaranteeing that plaintiffs in civil rights actions receive any compensatory damages awarded, under the current set of facts the proposed Limited Consent offers no benefit to Plaintiff.

## CONCLUSION

The City's motion is at bottom an attempt to avoid a trial at which the City and its Police Department will finally have to answer for its paramount role in a widespread forty-five year scandal of systemic torture, fabrication and cover-up, and a widespread code of silence at Area 2. *Monell* and § 1983 afford Plaintiff the right to that trial. The City's Motion to Bifurcate should be denied.

Dated: August 1, 2018

Respectfully submitted,

/s/ Ben H. Elson
Joey L. Mogul, G. Flint Taylor
Ben H. Elson, Brad J. Thomson
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Avenue
Chicago, IL 60642
(773) 235-0070
Attorneys for Plaintiff Alonzo Smith