IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALONZO SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16 C 3404 |
| v. | ) | |
| | ) | Judge Amy St. Eve |
| JON BURGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court, in its discretion, denies Defendant City of Chicago's motion to bifurcate brought pursuant to Federal Rule of Civil Procedure 42(b). [196].

## STATEMENT

On March 17, 2016, Plaintiff Alonzo Smith filed the present lawsuit against former Chicago Police Officers, former Cook County State's Attorneys, former City of Chicago officials, the City of Chicago, and the County of Cook alleging violations of his constitutional rights, including a claim for municipal liability under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), along with supplemental state law claims. Since then, the parties have engaged in considerable motion practice, fact discovery, and expert discovery. In fact, as the City admits, the parties have completed *Monell* fact discovery. The Court has also set summary judgment and *Daubert* motions deadlines. Before the Court is the City's motion to bifurcate Plaintiff's *Monell* claim and stay expert discovery and trial on that claim brought pursuant to Rule 42(b). For the following reasons, the Court, in its discretion, denies the City's motion.

## FACTUAL BACKGROUND

Plaintiff alleges that he spent approximately twenty years incarcerated in the Illinois Department of Corrections due to his wrongful conviction of home invasion, armed robbery, and the murder of James Fullilove in 1984. He brings the present civil rights lawsuit after a Circuit Court of Cook County judge vacated his convictions pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, and the State of Illinois dismissed all charges against him on October 19, 2015.

Specifically, Plaintiff asserts that Defendant Sergeant John Byrne and Defendant Detective Peter Dignan – at the direction of Defendant Chicago Police Commander Jon Burge – falsely arrested and charged him with Fullilove's murder after Defendants Byrne and Dignan tortured him in order to coerce his confession. He alleges that his case was not an isolated occurrence, but rather the interrogation and torture at the Area 2 Police Headquarters ("Area 2") was part of a long-standing pattern and practice of racially motivated torture, including electric

shock, baggings, mock executions, Russian roulette, and beatings dating back to the early 1970s when Defendant Burge was a detective at Area 2 on the midnight shift. Furthermore, Plaintiff contends that personnel in the Chicago Police Department ("CPD"), several Chicago mayors, successive Superintendents of the Chicago Police, and certain Cook County State's Attorneys concealed their knowledge of this ongoing, systemic torture and abuse.

Based on these allegations, Plaintiff asserts that the City is liable pursuant to *Monell* based on three main theories: (1) Defendants Burge, Byrne, and Dignan and other detectives under Defendant Burge's command engaged in a pattern and practice of torture with impunity to coerce confessions from suspects in violation of their constitutional rights amounting to a de facto policy, pattern, and practice of physical coercion to obtain confessions and fabricate evidence; (2) the numerous occasions in which Defendants Burge, Byrne, and Dignan coerced confessions from suspects was facilitated by a pervasive "code of silence" that also amounted to a de facto municipal policy, pattern, and practice of engaging in physical abuse and fabrication of evidence; and (3) the concealment of the pattern of torture under Defendant Burge by former police superintendents, mayors, and others were the actions of official "policymakers" that bind the City.

## LEGAL STANDARD

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed.R.Civ.P. 42(b); *Volkman v. Ryker*, 736 F.3d 1084, 1088 (7th Cir. 2013). When determining whether to bifurcate discovery or trial, the Court "must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). Whether to bifurcate discovery and trial is a decision committed to the district court's sound discretion and made on a case-by-case basis. *See Volkman,* 736 F.3d. at 1088-89. Indeed, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016).

## ANALYSIS

Prior to addressing the City's arguments in support of its motion to bifurcate, the Court notes that the nature of this lawsuit can be distinguished from other lawsuits against the City in which district courts have bifurcated *Monell* claims. Here, Defendants' alleged torture and coercion of Plaintiff's confession happened in the midst of Defendant Jon Burge's career at the CPD. *See Cannon v. Burge*, 752 F.3d 1079, 1081 n.1 (7th Cir. 2014) ("In a career spanning more than twenty years, Jon Burge rose to the rank of Commander in the Chicago Police Department before he was fired in 1993 for torturing and abusing suspects in order to obtain confessions. More than one hundred African–American arrestees accused Burge and officers working under him of engaging in sadistic acts."); *Moore v. Burge,* 771 F.3d 444, 445 (7th Cir. 2014) ("Between 1972 and 1991, while employed by Chicago's police force, Burge regularly

tortured people to extract statements"); *United States v. Burge*, 711 F.3d 803, 806 (7th Cir. 2013) ("Former Chicago Police Commander Jon Burge presided over an interrogation regime where suspects were suffocated with plastic bags, electrocuted until they lost consciousness, held down against radiators, and had loaded guns pointed at their heads during rounds of Russian roulette."). In this context, Plaintiff maintains that the individual Defendants believed that they could act with impunity due to the pervasive code of silence surrounding Defendant Burge's "regime," which is an integral part to Plaintiff's theory of individual and municipal liability.

That being said, the City makes the following arguments in support of its motion: (1) bifurcation will promote efficiency and judicial economy; (2) bifurcation will prevent undue prejudice to Defendants; and (3) individual officer liability on Plaintiff's underlying constitutional claims is a necessary predicate for finding *Monell* liability against the City. The Court addresses each argument in turn.

### I. Efficiency and Judicial Economy

In its motion, the City argues that bifurcation would obviate the need for the Court to preside over a trial that will be far lengthier and more complex than if all of Plaintiff's claims were presented simultaneously to a jury. Although this may be true in some civil rights actions against the City, here, two separate trials would actually cause judicial inefficiencies and prolong this lawsuit – especially in light of the Court's dispositive motion deadline and that the parties have engaged in expert discovery. In other words, it is too late to take advantage of any judicial efficiencies as the City argues. Plaintiff, for example, has already tendered his police practices expert opinion to Defendants' counsel. Also, there is considerable factual overlap between the *Monell* claims and claims against the individual Defendants belying the City's argument that absent bifurcation the jury trial will be "far lengthier" and that the "*Monell* part of the case would take months to try."

Moreover, although there is a significant amount of evidence concerning Plaintiff's *Monell* claims – especially in light of the multiple lawsuits that have been brought against Defendants Burge, Byrne, Dignan, and others for misconduct that is similar to Plaintiff's allegations in this lawsuit,[1] Plaintiff asserts that he will present a fine-tuned and streamlined version of the evidence. To that end, Plaintiff's counsel maintains that it will focus on admissions from City officials, judicial and administrative findings, testimony regarding a handful of key events involving policymakers, and the testimony of a small number of victims, in addition to a police practices expert witness. The Court is confident that Plaintiff's counsel will be able to streamline the *Monell* evidence in tandem with presenting evidence in relation to Plaintiff's individual liability claims. Indeed, the Court has presided over other civil rights trials in which plaintiffs have presented both *Monell* claims and individual liability claims in a streamlined fashion that did not "overwhelm" the judicial process as the City argues. *See, e.g., Obrycka v. City of Chicago*, 07 C 2372 (N.D. Ill.).

---

[1] *See, e.g., Wrice v. Burge*, 14 C 5934 (N.D. Ill.); *Tillman v. Burge*, 10 C 4551 (N.D. Ill.); *Cannon v. Burge*, 05 C 2192 (N.D. Ill.).

## II.     Prejudice

Next, the City argues that a single trial of all claims will severely prejudice Defendants and cause juror confusion. The City specifically argues that bifurcation would protect "Defendants from the inevitable prejudice caused by the introduction at trial of evidence relating to numerous other instances of alleged police misconduct that are not related to Plaintiff's case." First, the Court will determine whether certain instances of misconduct are relevant, admissible, or prejudicial at the pre-trial motion in limine stage, thus ameliorating any concerns about unrelated evidence. *See* Fed.R.Evid. 401, 403, 404(b). Second, based on Plaintiff's assertion that he will present a streamlined version of the *Monell* evidence, along with the fact that this evidence has considerable overlap with the individual liability claims, any such prejudice will be significantly curtailed. Last, the use of limiting instructions will help cure any juror confusion. *See Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 635 (7th Cir. 2018) (courts assume jurors follow limiting instructions).

## III.    Individual Liability Necessary Predicate

Citing *Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), the City argues that, in general, a plaintiff cannot reach *Monell* liability without first proving that an individual employee violated a person's constitutional rights.[2] The Seventh Circuit, however, has rejected the argument that the individual officers' liability is a necessary predicate to finding municipality liability in *Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293, 305 (7th Cir. 2010). In *Thomas*, the decedent was a pre-trial detainee housed in the Cook County Department of Corrections whose mother brought a Fourteenth Amendment deliberate indifference claim based on defendants' failure to respond to the decedent's serious medical needs resulting in his death. *Id.* at 297. After considering these circumstances, the Seventh Circuit concluded that

---

[2] The City made the same argument relying on *Heller* in its Rule 12(b)(6) motion to dismiss Plaintiff's Complaint. (R. 48, 7/15/16 Mot. Dismiss, at 39-40.) In rejecting the City's argument, the Court explained:

> Over six years ago, the Seventh Circuit rejected the argument that *Heller* requires individual officer liability before a municipality can ever be held liable for under *Monell*. *See Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010). Instead, the Seventh Circuit construed the *Heller* holding more narrowly, namely, "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Id.*; *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("In some civil-rights cases, [ ] a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim."). The City has failed to address this distinction. Because Plaintiff has plausibly alleged his *Monell* claim under the federal pleading standards and the City has failed to address the *Thomas* distinction, the Court denies the City's motion to dismiss Count IV of the Complaint.

*Smith v. Burge,* 222 F. Supp. 3d 669, 690 (N.D. Ill. 2016).

Cook County's policy was the moving force behind the constitutional deprivation – independent from the individual correctional officers' conduct – based on the County's well-documented breakdowns in its policies for retrieving pre-trial detainees' medical requests. *Id*. at 305. In making this determination, the Seventh Circuit specifically explained:

> The County, in this case, appears to push for a rule that requires individual officer liability before a municipality can ever be held liable for damages under *Monell*. This is an unreasonable extension of *Heller*…. The actual rule, as we interpret it, is much narrower: a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict. So, to determine whether the County's liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth.

*Id.* (internal citations omitted).

The Court thus turns to the Seventh Circuit's guidance by examining Plaintiff's theories of municipal liability and the nature of his constitutional violations. *See Swanigan v. City of Chicago,* 775 F.3d 953, 962 (7th Cir. 2015); *Thomas,* 604 F.3d at 305. Plaintiff's Fourteenth Amendment due process claim based on his allegedly coerced and fabricated confession involved not only certain named Defendants' alleged misconduct, but also other detectives and under Defendant Burge's command and municipal policymakers – many of whom helped create the pattern and practice of using torture to coerce confessions. Under this theory of liability, Plaintiff not only alleges that Defendant Officers coerced his false confession and fabricated evidence via torture, but that Defendant Officers' and other municipal employees' misconduct was the natural consequence of the City's widespread custom and policy aided by the alleged code of silence. Under the circumstances, a jury's verdict against the City would not be inconsistent with a jury finding in favor of the named Defendant Officers. Accordingly, the City's argument fails under *Thomas* and *Swanigan*.

On a final note, the Court rejects the City's request to enter a limited consent judgment due to the legitimate, non-economic factors described in this Court's prior bifurcation rulings against the City. *See, e.g., Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 1425594, at *4-5 (N.D. Ill. Apr. 20, 2017); *Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *9 (N.D. Ill. Sept. 2, 2015); *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("Some cases have remedial import beyond the individual plaintiff's claim for monetary damages, and § 1983 provides a vehicle for obtaining other judicial relief against governmental policies that violate constitutional rights.").

DATED:  August 9, 2018

_____
AMY J. ST. EVE
United States Circuit Judge
Sitting By Designation