```
 1            IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3
   ALONZO SMITH,                      ) Docket No. 16 C 3404
 4                                    )
              Plaintiff,              )
 5                                    )
         vs.                          )
 6                                    )
   JON BURGE, et al.,                 ) Chicago, Illinois
 7                                    ) December 7, 2017
              Defendants.             ) 8:53 o'clock a.m.
 8

 9        EXCERPT OF PROCEEDINGS - STATUS & MOTION
            BEFORE THE HONORABLE AMY J. ST. EVE
10

11 APPEARANCES:

12
   For the Plaintiff:        PEOPLE'S LAW OFFICES
13                           BY: MS. JOEY L. MOGUL
                                 MR. BRAD THOMSON
14                           1180 North Milwaukee Avenue
                             Chicago, Illinois  60622
15

16 For Defts. Shines,        DYKEMA GOSSETT, PLLC
   Needham, Hillard, Daley   BY: MR. PAUL A. MICHALIK
17 & Estate of Leroy Martin: 10 South Wacker Drive, Suite 2300
                             Chicago, Illinois  60606
18

19 For the Individual        HALE LAW, LLC
   Officer Defendants:       BY: MR. MATTHEW A. HURD
20                           53 W. Jackson Blvd., Suite 330
                             Chicago, Illinois  60604
21

22 For Defts. Kelly and      COOK COUNTY STATE'S ATTORNEY'S
   Cook County:                 OFFICE
23                           BY: MR. JAMES E. HANLON, JR.
                             500 Richard J. Daley Center
24                           Chicago, Illinois  60602

25
```

```
 1  APPEARANCES (Cont'd):

 2
    For Deft. Kelly:            JONES DAY
 3                              BY:  MR. JASON WINCHESTER
                                     MS. KRISTINA K. CERCONE
 4                              77 West Wacker Drive, Suite 3500
                                Chicago, Illinois  60601
 5

 6  For Deft. City of           GREENBERG TRAURIG, LLP
                                BY:  MS. ELIZABETH S. RALPH
 7                              77 West Wacker Drive, Suite 3100
                                Chicago, Illinois  60601
 8

 9  Court Reporter:             MR. JOSEPH RICKHOFF
                                Official Court Reporter
10                              219 S. Dearborn St., Suite 2118
                                Chicago, Illinois  60604
11                              (312) 435-5562

12              * * * * * * * * * * * * * * * * *

13                   PROCEEDINGS RECORDED BY
                      MECHANICAL STENOGRAPHY
14                TRANSCRIPT PRODUCED BY COMPUTER
```

```
 1          (Proceedings had in open court:)
 2              THE CLERK:  16 C 3404, Smith vs. Burge.
 3              THE COURT:  Good morning.
 4              MS. MOGUL:  Good morning, your Honor, Joey Mogul and
 5   Brad Thomson here on behalf of Mr. Smith.
 6              MR. HURD:  Matt Hurd on behalf of the individual
 7   officers.
 8              MS. RALPH:  Good morning, your Honor, Elizabeth Ralph
 9   on behalf of the City of Chicago.
10              MR. MICHALIK:  Paul Michalik on behalf of defendants
11   Hillard, Needham, Shines, Estate of Martin, and Daley.
12              MR. HANLON:  Good morning, your Honor, Jim Hanlon on
13   behalf of defendants Paul Kelly and Cook County.
14              MR. WINCHESTER:  Good morning, your Honor, Jason
15   Winchester for Paul Kelly.
16              MS. CERCONE:  Good morning, your Honor, Kristina
17   Cercone on behalf of Mr. Kelly.
18              THE COURT:  Good morning.
19              You are here for status.  I have defendants' motion
20   to extend fact discovery, plaintiff's motion to compel, and an
21   issue we will take up at sidebar in a bit.
22              Have you seen defendants' motion to extend fact
23   discovery, Ms. Mogul?
24              MS. MOGUL:  Yes.
25              THE COURT:  What is your --
```

1	MS. MOGUL: Your Honor, we have no objection to the
2	extension of fact discovery for 60 days, assuming that the
3	expert discovery will be extended, as well.
4	THE COURT: Of course.
5	MS. MOGUL: And just last time I, unfortunately,
6	couldn't be here. And, so, I'm just hoping that in addition
7	to discovery cutoffs for plaintiff and defendants, that we can
8	also have an extra month to name any potential rebuttal
9	experts.
10	THE COURT: Did I not give you a rebuttal date? Is
11	that what you are saying?
12	MS. MOGUL: Yes.
13	THE COURT: Okay. So, I will grant your motion to
14	extend the fact cutoff.
15	You are asking for 60 days?
16	MR. HURD: Yes.
17	THE COURT: So, I will move it out 60 days from the
18	December 22nd date.
19	THE CLERK: February 23rd.
20	THE COURT: February 23rd.
21	And, then, I will move out accordingly the expert
22	dates and add a rebuttal expert --
23	MS. MOGUL: Thank you.
24	THE COURT: -- after defendants' expert deadline.
25	So, defendants' expert deadline is now February 23rd. That

1  will get moved out 60 days.  And I will give you 30 days after
2  that for the rebuttal experts.
3           MR. HURD:  Your Honor, would that be plaintiff issues
4  rebuttal experts and then we could issue rebuttal experts?
5           THE COURT:  Let's see if you need the rebuttal
6  experts.
7           MR. HURD:  Okay.
8           MS. MOGUL:  So, my understanding, your Honor --
9  please correct me if I'm wrong -- so, we would have to name
10 any experts March 23rd, our initial experts?
11          THE COURT:  That sounds about right.
12          MS. MOGUL:  And the defendants would then have until
13 April 23rd to name their experts, correct?
14          THE COURT:  Assuming those are not weekend days, yes.
15          MS. MOGUL:  Right.  I'm just speculating here.
16 Right.
17          THE COURT:  And, then, May 23rd for rebuttal.
18          MS. MOGUL:  Right.
19          THE COURT:  And expert would close June 23rd, again,
20 assuming those dates are not weekends or holidays.
21          MR. HURD:  But if the defendant needed a rebuttal
22 expert --
23          THE COURT:  You will have to raise it with me.
24          MR. HURD:  Okay.  Very good.
25          THE COURT:  So, that motion is granted.

1          Have you seen plaintiff's motion to compel the
2  records?
3          MS. RALPH: Yes, we have, your Honor.
4          THE COURT: And what is your response?
5          MS. RALPH: So, our response on this -- and if your
6  Honor is inclined to take up a ruling on it today, we're
7  certainly prepared to argue it. We're happy to put together a
8  written response, if that would be helpful.
9          THE COURT: Let's see if we can do it today.
10         MS. RALPH: Okay.
11         So, as you can see from reading the motion, your
12 Honor, we've been meeting and conferring on this issue for
13 some months now. And the City has taken the position from the
14 start of this that this request is seeking extremely
15 burdensome and broad discovery on a minimally relevant issue.
16         THE COURT: Just so I know, you have agreed to
17 produce -- so, I think part of the motion is moot, is where I
18 am going. You have agreed to produce Randy Scott's arrest
19 that occurred prior to the murder here; is that correct?
20         MS. RALPH: Yes, that's correct.
21         THE COURT: Okay. So, that aspect of the motion is
22 moot.
23         When will you be able to produce?
24         MS. RALPH: I don't have an answer to that. We are
25 working on it very diligently. I'm hoping within the next,

1  you know, couple of weeks.
2          THE COURT:  I will give you a deadline when we are
3  done today.
4          MS. RALPH:  Okay.
5          THE COURT:  As to the records, which sounds like the
6  bulk of them that are after the murder at issue here, go ahead
7  and respond.
8          MS. RALPH:  I think as to the remainder of the
9  records, the plaintiff is seeking documents going out 22 years
10 in time for a number of arrests.  To date, we just haven't
11 seen anything indicating any of these documents have any
12 relevance to this case.
13         THE COURT:  What kind of documents are we talking
14 about?  Just the arrest report, or what else are you looking
15 for, Ms. Mogul?
16         MS. MOGUL:  I mean, well, with respect to -- most of
17 these are misdemeanors, so that we would just be seeking the
18 arrest report.  There's generally a general offense case
19 report.  I'm not clear if felony review was sought.  There
20 potentially might be a supplementary report.
21         With respect to the attempted murder, though, there
22 would be some supplementary reports that we would be seeking.
23         THE COURT:  When was the attempted murder?
24         MS. MOGUL:  I believe it was in 2004.  Give me one
25 second, your Honor, and I'll -- 2003, your Honor.

1         THE COURT: Okay.

2         Go ahead.

3         MS. RALPH: I think putting some kind of limitation
4 on the type of documents plaintiff is seeking may be helpful.
5 One of the objections the City has here is the way the request
6 is written, it seeks every piece of paper that exists relating
7 to these arrests, and that request as written is extremely
8 burdensome and extremely broad.

9         But notwithstanding that issue, again, these were
10 arrests going out 30 years in time. There's no reason to
11 think that any of these arrests are relevant to this case.
12 There's no reason to believe -- well, certainly none of these
13 arrests occurring after 1983 were known to the detectives
14 investigating this case.

15         I think, further, plaintiff has noted in Paragraph 3
16 of this motion that there were viable alternative suspects in
17 this case that the detectives failed to investigate. That may
18 be one theory of this case. It's certainly not what has been
19 alleged in the complaint, that there were alternative suspects
20 here, that these detectives failed to look into. In fact, the
21 entire reason plaintiff has keyed into this individual is
22 because he is identified in the police reports as an
23 individual who was investigated.

24         So, on the whole, we feel that there's just not
25 enough of a reason to put the City to this burdensome task

1  when these documents are almost certainly unlikely to yield
2  relevant information in this case.
3          THE COURT: When you say "burdensome," how burdensome
4  would it be? In other words, what would it require for the
5  City to obtain the arrest reports for these post-murder
6  arrests, so the post-1984 arrests?
7          MS. RALPH: My understanding is that this is a manual
8  search, that each one of these arrests is going to have to be
9  run as a separate search. There's no way to kind of plug in
10 the name "Randy Scott" to a search database and find the
11 documents. This is actually going to require going through
12 the list one by one and potentially searching multiple sources
13 where the documents are stored, as well, for each of these
14 arrests.
15         THE COURT: Ms. Mogul?
16         MS. MOGUL: Well, your Honor, let me just back up for
17 a second. Mr. Scott, as you know, was arrested for arson
18 originally, burning up Mr. Fullilove's car, the victim's car
19 in this case. His name was mentioned in a street file report
20 that wasn't originally disclosed to us in this case. We did
21 find it. All we know is his name was mentioned, you know,
22 some identifying data, but not the underlying report that had
23 to do with the arson in this case. We then -- he wasn't
24 charged with arson. He was charged with criminal damage on
25 property.

1      We have no understanding from our records that we've
2 received that there was any investigation into Mr. Scott
3 whatsoever to determine where his whereabouts were at the time
4 of Mr. Fullilove's murder.  But, clearly, he had previously
5 demonstrated both a motive for committing potentially this
6 murder, as well as violent acts towards the victim himself.
7      THE COURT:  That's a separate issue, it sounds like:
8 what investigation they did into Mr. Scott for this case.
9      MS. MOGUL:  In what sense, your Honor?  I mean, at
10 this point --
11      THE COURT:  You are asking for arrest reports post
12 this case.
13      MS. MOGUL:  Well, in this case, we feel like they did
14 fail to do a proper investigation.  They failed to -- you
15 know, and instead what they did is torture our client into
16 giving a confession, that was then used to convict him and
17 wrap up and clear this entire case.  Their failure to
18 investigate back in 1982, you know, puts us at a burden in
19 terms of now we feel that we have to do the investigation to
20 determine whether Mr. Scott, in fact, is one of the culprits,
21 or the culprit, of committing this murder.
22      We think that's relevant in the sense that I believe,
23 and they've basically signaled, that they are going to
24 continue to indicate that Mr. Smith is guilty of this murder.
25 I think it's relevant for us to be able to show that Mr. Scott

1 was an alternative suspect.

2 We're also at a distinct disadvantage here, your
3 Honor, in that the lead detective -- the detectives in this
4 case, Bryne and Dignan, are on the Fifth Amendment. So, we
5 can't even ask them any questions with respect to what
6 investigation was done into Mr. Scott.

7 So, I guess -- I understand there's two issues here.
8 One, what the detectives knew at the time. We've only
9 received an arrest report. We believe we're entitled to much
10 more with respect to that, to what -- that crime and what
11 investigation was done by the Chicago Police Department into
12 that crime.

13 THE COURT: Into the arson?

14 MS. MOGUL: Into that arson.

15 But at this point, your Honor, I think that we have a
16 right to be able to look to see what other types of crimes
17 Mr. Scott has committed, so that we can potentially make a
18 case to demonstrate that he has a modus operandi of conducting
19 or committing certain types of crimes.

20 The plethora of his arrests in this case are for
21 assault and for battery and now for attempted first degree
22 murder. We don't even know the details of that. At this
23 point, we're not saying they're even admissible. We're just
24 seeking discovery.

25 THE COURT: Right. It is a separate issue.

1           You should certainly get the information about what
2  the detectives knew at the time with respect to the arson,
3  given your theory.
4           What is the relevance to your theory of getting the
5  arrest reports post-1984?
6           MS. MOGUL:  Because in this case, if we can make a
7  good case to show that Randy Scott has committed this murder,
8  why -- and then they are continuing to contest his innocence,
9  why don't we get to be able to present that to the jury in
10 this case?
11          THE COURT:  But how are the subsequent arrest
12 reports, from '84 forward, going to help you prove that
13 Mr. Scott committed this murder?
14          MS. MOGUL:  They may demonstrate that he has a modus
15 operandi, that he has certain -- the way he commits certain
16 acts of violence, who he chooses to target and why.  I would
17 say it would be -- it's potentially relevant under a 404(b)
18 analysis.
19          But it's sort of like if you look at some of these
20 other cases where DNA has found that the person convicted of a
21 rape and murder didn't commit that rape and murder and then
22 they find someone else did it; they find that that other
23 person is a serial rapist.  They're able to look at the other
24 crimes the real culprit committed to see that, in fact, that
25 that culprit has a pattern of engaging in this type of

1   violence.
2            I mean, that has been relevant in other cases.  That
3   has been not only helpful to help exculpate an individual, but
4   also to be able to show, yes, this other person, in fact, did
5   it.  At this point, we're just trying to see if we can put the
6   pieces of this puzzle together.
7            THE COURT:  I am going to grant your motion in part.
8   You have already agreed to turn over the pre-1984 arrest
9   reports or documents.
10           Post-1984, I am going to direct you to turn over just
11  the arrest report with respect to any arrests of Mr. Scott,
12  not additional documentation.  And, then, we will go from
13  there and see if anything is necessary.
14           My guess is the arrest report on some of these
15  misdemeanors may not be helpful to what you are attempting to
16  argue.  But I do not know.  Why don't you get just the
17  reports, and then we will see from there if anything else
18  should be turned over.
19           Whether or not this theory is admissible, I am not
20  ruling on that now.  There will come a time for that, but I am
21  not --
22           MS. MOGUL:  That would include the arrest report for
23  this attempted murder?
24           THE COURT:  Yes.
25           So, your motion --

1        MS. MOGUL:  So, with respect to the --
2        THE COURT:  -- is granted in part.
3        Then let's try to turn over -- see if you can do it
4   by December 22nd, or at least turn over a portion of it by
5   December 22nd.
6        MS. MOGUL:  Your Honor, I would ask that they not
7   redact the personal identifying information in those reports,
8   so that we are able to properly conduct an investigation of
9   that information.
10       THE COURT:  What is your --
11       MS. RALPH:  I think we're obligated to redact certain
12  information under federal law.  So, I'm not sure what the
13  scope of the request is.
14       THE COURT:  Why don't you see if you can work that
15  out among yourselves to stay in compliance with the law but
16  not to -- but to give sufficient information so you can do
17  what you need to do.
18       What else in terms of status?  I know we have an
19  issue at sidebar.
20       What else in terms of status?
21       MR. HANLON:  Nothing from our perspective.
22       THE COURT:  You are quiet on this side.  Anything
23  from this side of the room?
24       MS. CERCONE:  No, your Honor.
25       MR. WINCHESTER:  No, your Honor.

```
 1              MS. MOGUL:  No, your Honor.
 2              THE COURT:  Let's get another status as to everybody
 3   in late January.
 4              THE CLERK:  January 29th at 9:15.
 5              THE COURT:  Does that work for everybody?
 6              MR. HANLON:  I'm sorry, January -- which --
 7              THE CLERK:  29th at 9:15.
 8              MS. MOGUL:  Yes.
 9              MR. HANLON:  That works.
10              THE COURT:  Other than as to Mr. Daley, anything
11   else?
12        (No response.)
13              THE COURT:  We can go to sidebar.
14        (Proceedings had at sidebar, under seal:)
15                     *    *    *    *    *
16
17   I certify that the foregoing is a correct excerpt from the
     record of proceedings in the above-entitled matter.
18
19
     /s/ Joseph Rickhoff                          July 7, 2023
20   Official Court Reporter
21
22
23
24
25
```