UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALONZO SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:16-cv-03404 |
| | ) | |
| v. | ) | |
| | ) | |
| JON BURGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### BOB HERCULES' MOTION TO VACATE PROTECTIVE ORDER

Intervenor BOB HERCULES, by his counsel LOEVY & LOEVY, respectfully moves that the Court vacate its January 24, 2018 protective order precluding the distribution the video of Defendant Richard M. Daley's deposition in this case. In support, HERCULES states the following:

**I.     INTRODUCTION**

This case involves disturbing allegations of a pattern of torture perpetrated by Chicago police officers to coerce confessions from innocent criminal defendants. Plaintiff Alonzo Smith alleged that the torture was committed with the full knowledge of Defendant Richard M. Daley, who served as State's Attorney of Cook County at the time of Smith's coerced confession, and who allegedly did nothing to address the issue after becoming Mayor of Chicago. Smith deposed Daley, and shortly thereafter the parties settled the case. Daley's deposition is critical for the public to understand what the State's Attorney's Office and City knew, and when it knew it, about substantial allegations of prolonged police misconduct. But it is currently shielded by a protective order that prohibits its dissemination—an order that has never been subject to meaningful adversary testing by the press or the public who have a vital interest in this information.

Intervenor Bob Hercules is a Peabody Award-winning documentary filmmaker who is reporting on the underlying events, for which video footage of Daley's deposition is indispensable. But due to the protective order, he is unable to access the deposition footage because the City denied his Illinois Freedom of Information Act request based on this Court's protective order and because Smith's counsel would like to release it to Hercules but is prohibited by the protective order from doing so. Thus, for the following reasons, he respectfully moves that the Court vacate the protective order.

## II. STATEMENT OF FACTS

In 2016, Smith sued various defendants, including Daley, for perpetrating and/or covering up the fact that Chicago police officers had coerced his confession. This Court denied Daley's motion to dismiss in part, finding that there were credible allegations "that Defendant Daley, as Chicago's Mayor, participated in a conspiracy to conceal evidence of police torture." *Smith v. Burge*, 222 F. Supp. 3d 669, 697 (N.D. Ill. 2016).

To make his case, Smith noticed Daley's deposition. Daley moved to preclude the deposition on the ground that a stroke he suffered in 2014 purportedly made him "unable to provide accurate or reliable answers in response to questions that might be put to him." Defendant Daley's Motion for Protective Order to Preclude His Deposition, at 3 (Mar. 22, 2017), ECF No. 284.[1] The Court denied that motion without prejudice at a sidebar conference. *See* Hercules Decl. Ex. 1.

Daley renewed his motion and submitted new medical evidence. *See* Defendant Daley's Renewed Motion for Protective Order to Preclude His Videotaped Deposition (Dec. 18, 2017), ECF No. 285. Smith opposed the motion, arguing *inter alia* that Daley was, at the time, serving

---

[1] As discussed below, many of the relevant documents were initially filed under seal and were unsealed on Hercules' motion. When citing the documents, Hercules includes the dates that the documents were initially filed and the ECF numbers associated with the unsealed records. Thus, the dates on the file stamps do not match the dates the documents were initially filed.

as Of Counsel for the law firm Katten Muchin Rosenman, LLP ("Katten"), as Executive Director of Tur Partners, and on the Board of Directors of Coca-Cola, and that he was of sound enough mind to sit for a deposition. *See* Plaintiff's Response to Defendant Daley's Renewed Motion for a Protective Order to Preclude His Deposition, at 9-10 (Jan. 16, 2018), ECF No. 286. Smith offered to conduct the deposition "under seal" to avoid potential embarrassment, which Daley had not requested. *Id*. at 18.

The Court then held a hearing on Daley's renewed motion. The public was not informed that the Court would consider a protective order barring distribution of the video deposition: the Minute Entry setting the hearing (ECF No. 163) did not communicate this, and the motion papers were under seal at the time.

At the hearing, the Court ordered that the deposition go forward, finding that the medical evidence and Daley's ongoing work for Katten, Tur Partners, and Coca-Cola undermined Daley's claimed inability to answer questions. *See* Hercules Decl. Ex. 2 at 99:10-13. At the same time, the court ordered various accommodations, including that the deposition take place in chunks rather than one session. *See id*. at 101:24-102:3. The Court also ordered that the deposition "will be under seal. Nothing can happen with that video deposition without further order of the Court." *Id*. at 102:21-23 (the "Protective Order"). The Court, however, was not asked to, and did not, make any findings about whether precluding distribution of the deposition satisfied the "good cause" standard for a protective order under Fed. R. Civ. P. 26(c).

The depositions went forward on April 9, June 7, and July 16, 2018. *See* Taylor Decl. ¶ 5. The parties then began settling the case, and informed the Court on November 6, 2018, that a settlement had been reached. *See* Minute Entry (Nov. 6, 2018), ECF No. 235.

Hercules, a Peabody Award-winning filmmaker, moved to intervene to better understand and report on the events surrounding Daley's deposition and, ultimately, the deposition's contents—including whether Daley's deposition revealed that he knew about Chicago Police Department torture and coerced confessions and did nothing about it. *See* Bob Hercules' Motion to Intervene and Unseal Court Records (Aug. 24, 2021), ECF No. 256. Hercules also moved to unseal certain docket entries related to Daley's motion to preclude his deposition so as to better understand the basis for the protective order. *See id*. The Court granted Hercules leave to intervene, *see* Docket Entry (Mar. 25, 2022), ECF No. 272, and Daley opposed unsealing, *see* Richard M. Daley's Response in Opposition to Petitioner Hercules' Motion to Unseal Court Records (Oct. 28, 2022), ECF No. 276.

The Court granted Hercules' unsealing motion in part. It unsealed many of the documents Hercules requested but redacted parts that discussed Daley's private medical information. *See* Order (May 8, 2023), ECF No. 279. Those documents, which were then placed on the public docket, include the documents referenced above that concern Daley's unsuccessful motion for an order precluding his deposition and the Court's Protective Order barring the parties from distributing the deposition video. Hercules now seeks the deposition video for his journalistic purposes, but the Protective Order precludes him from receiving it.

### III.    ARGUMENT

**A.    Hercules has standing to challenge the Protective Order.**

Before addressing the merits of the Protective Order, Hercules must first establish his standing to challenge it. He has standing on two independent grounds: the Protective Order interferes with his right to receive the deposition video from a willing speaker, and it has precluded him from receiving a copy of the video deposition from the City of Chicago Law Department under the Illinois Freedom of Information Act ("FOIA").

### 1. The Protective Order interferes with Hercules' right to receive the video deposition from a willing speaker.

Media intervenors have standing to challenge a protective order if there is a "willing speaker" who would give them information but for the order. *Bond v. Utreras*, 585 F.3d 1061, 1077 (7th Cir. 2009). This standing derives from the First Amendment, which includes the right to receive information. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("Freedom of speech presupposes a willing speaker. But where a speaker exists … the protection afforded is to the communication, to its source and to its recipients both."). The right extends to the distribution of discovery materials, including depositions. *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (adjudicating media intervenor's right to receive discovery materials shielded by a protective order); *Landis+Gyr Inc. v. Zurich Am. Ins. Co.*, No. 4:16-cv-82, 2024 WL 124857, at *3 (N.D. Ind. Jan. 11, 2024) (applying willing speaker doctrine to unfiled deposition transcripts).

Hercules has a willing speaker: Flint Taylor, who represented Smith in this proceeding. As the accompanying Taylor Declaration attests, Taylor lawfully came to possess videotapes of Daley's deposition in his capacity as Smith's counsel, supports the lifting of the Protective Order, and would distribute the deposition videos to Hercules but for the existence of the Protective Order barring him from doing so. Taylor Decl. ¶¶ 5-7.

It is of no moment that Taylor consented to the Protective Order. Consent vitiates willing speaker status only when the consenting parties "do not themselves seek relief from the requirements of the protective order." *Bond*, 585 F.3d at 1078. In *Bond*, for instance, the intervenor had no willing speaker because one party "objected" to the intervenor's challenge to the protective order while the other "did not join [the intervenor's] request to modify the protective order and made no substantive response to his petition." *Id*. at 1067. Appellate cases decided

before and after *Bond* stand for the same proposition, including when the willing speakers are parties' attorneys. *See, e.g.*, *U.S. v. Wecht*, 484 F.3d 194, 203 (3d Cir. 2007), as amended (July 2, 2007) ("[W]e hold that the consent of the parties to an order limiting speech is irrelevant to third-party standing analysis as long as the third party can demonstrate that an individual subject to the order would speak more freely if the order is lifted or modified. That Wecht's attorneys consented to a Pretrial Order incorporating Local Rule 83.1 is of no consequence as long as the media outlets can show that counsel want to speak about the case and believe that the Rule limits their ability to do so."); *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 228 (4th Cir. 2019) (holding that parties can be willing speakers despite agreeing not to speak via a settlement agreement).

Here, unlike in *Bond*, Taylor's declaration shows that he supports Hercules' motion to vacate the Protective Order and seeks relief from it so that he (Taylor) can distribute the video deposition to Hercules. Taylor Decl. ¶¶ 6-8. Taylor is a willing speaker, and Hercules has standing to challenge the Protective Order.

        **2.**      **The Protective Order interferes with Hercules' rights under Illinois FOIA.**

Media intervenors also have standing to challenge a protective order that precludes them from obtaining records under state public records laws. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) (holding that intervenors had standing because protective order "interferes with their attempt to obtain access to the Settlement Agreement, either under the right of access doctrine or pursuant to the Pennsylvania Right to Know Act"); *see also Bond*, 585 F.3d at 1076 n.10 (endorsing *Pansy*'s reasoning but finding it inapplicable because the relevant state public records law did not preclude the public body from disclosing the records).

Here, Hercules made an Illinois FOIA request to the City of Chicago Law Department for copies of the video deposition. Hercules Decl. ¶ 11. The Law Department denied the request on

the sole ground that the protective order forbids them from releasing the video under Illinois FOIA. *See* Hercules Decl. Ex. 3 (quoting *In re Appointment of Special Prosecutor*, 129 N.E.3d 1181, 1187 (Ill. 2019) (holding that "protective orders took precedence over the disclosure requirements of FOIA")). Thus, the Protective Order has precluded Hercules from receiving the deposition videos under Illinois FOIA. Hercules thus has standing for this separate reason as well.

### B. The Court should vacate the Protective Order.

The proponent of a protective order has the burden to show that good cause supports its entry. After the Court enters such an order, the burden sometimes shifts to the party seeking to vacate it. But given the circumstances surrounding the Protective Order, Daley bears the burden to justify it. He cannot meet that burden here given the massive public interest in the deposition video and the absence of any demonstrated privacy implications. Even if Hercules bore the burden to vacate the order, though, he has easily met that burden.

#### 1. Daley bears the burden to show continued good cause for the Protective Order.

A court's authority to enter protective orders derives from Fed. R. Civ. P. 26(c). That rule allows courts to enter protective orders "for good cause." Fed. R. Civ. P. 26(c). A protective order's proponent bears the burden to show that good cause supports it, including when all parties stipulate to the order. *See Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("Even if the parties agree that a protective order should be entered, they still have 'the burden of showing that good cause exists for issuance of that order.'" (quoting *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988)).

In some circumstances, once a court enters a protective order, the burden shifts to the party seeking to lift or modify it. For instance, in *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 567 (7th Cir. 2018), the Seventh Circuit shifted the burden in this way. But it did so only after

finding that the movant sought to "***prevent*** public disclosure of the Cited Documents" by imposing additional conditions on their distribution. *Id*. (emphasis in original). It thus distinguished possible cases—like this one—in which the movant is seeking documents "so the public can view them," and where the "strong presumption toward public disclosure" justifies placing the burden on the party supporting continued secrecy. *Id*. at 566-67. Thus, *Heraeus* supports placing the burden on Daley to justify continued good cause for the order.

This conclusion accords with those of other courts, which have held that the placement of the burden depends on why the moving party seeks to modify or vacate a protective order. In particular, courts have held that the burden remains with the order's proponent when a party seeks to access records subject to it in order to promote the public interest. *See, e.g.*, *Daniels v. City of New York*, 200 F.R.D. 205, 207 (S.D.N.Y. 2001) ("When a private party asserts a public interest in order to gain access to information, the burden is on the party seeking to maintain the confidentiality order to show that there is 'good cause' for continued confidentiality."); *Crothers v. Pilgrim Mortg. Corp.*, No. 95-cv-4681, 1997 WL 570583, at *3 (S.D.N.Y. Sept. 11, 1997) (reaching same conclusion); *In re U.S Motion to Modify Sealing Ords.*, No. 5:03-MC-2, 2004 WL 5584146, at *2 (E.D. Tex. June 8, 2004) ("When the case is of great interest to the public and media, the courts refuse to shift the burden to the party seeking to modify the protective order. Instead, the party seeking to maintain confidentiality must show good cause for continued protection."). Here, Hercules seeks to vacate the Protective Order to further public knowledge of a monumentally important issue: what Daley knew, and when, about police torture and coerced confessions in his capacity as State's Attorney of Cook County and Mayor of Chicago. This warrants placing the burden on Daley.

Daley also bears the burden for a separate reason: the Court did not issue any findings that good cause supported the Protective Order. It instead issued the order without elaborating on its reasoning. The Seventh Circuit has held that protective orders entered in such circumstances warrant less deference: while appellate courts ordinarily review protective orders for abuse of discretion, *see Heraeus*, 881 F.3d at 565, they instead "independently determine" the validity of a protective order when the district court made no "specific finding of 'good cause'" or otherwise refer to "good cause" in the protective order, *Jepson*, 30 F.3d at 859. Courts in other districts, moreover, have held that who bears the burden hinges on whether the court made an initial good cause determination. *See, e.g.*, *U.S. v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2016 WL 278968, at *4 (E.D. Tex. Jan. 22, 2016) ("If good cause was shown for the original protective order, the burden is on the party seeking modification to show good cause for modification; if good cause was not shown for the original protective order, the burden of showing good cause is on the party seeking continued confidentiality protection."); *see also id*. (collecting cases). Since the Court here made no good cause determination, Daley retains the burden to show good cause for the order.

### 2. No good cause supports the Protective Order.

"In determining whether there is good cause for a protective order, the court must balance the harm to the party seeking the protective order against the importance of public disclosure." *Sokol v. City of Chicago, Illinois*, No. 13-cv-5653, 2014 WL 5473050, at *1 (N.D. Ill. Oct. 29, 2014). That balance is always case specific but may involve various factors, including "privacy interests, whether the information is important to public health and safety and whether the party benefitting from the confidentiality of the protective order is a public official." *Id*. (quoting *Rangel v. City of Chicago*, No. 10-c-2750, 2010 WL 3699991, at *1 (N.D. Ill. Sept. 13, 2010), further quoting *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997)). Courts also consider whether

the protective order would interfere with disclosure under state freedom of information laws. And if they do, there is a "strong presumption" that "tilts the scales heavily against entering or maintaining an order of confidentiality." *Pansy*, 23 F.3d at 791.

Here, Hercules has triggered the strong presumption against protective orders by showing that the Protective Order interferes with his ability to obtain the video deposition under Illinois FOIA—the Law Department denied his request solely under the Protective Order. Further, the public interest in Daley's deposition is undeniably strong. The public has a massive interest in knowing what the Cook County State's Attorney's Office and City of Chicago knew about patterns and practice of police torture and false confessions. Daley, as the head of each public body at a relevant time, would embody that knowledge. Indeed, in rejecting a protective order in another case, this Court has already acknowledged that "[t]he public has a right to know whether allegations of police torture are appropriately investigated and resolved by the City of Chicago," and characterized the public interest as "significant." *Wiggins*, 173 F.R.D. at 230. Here, moreover, Daley was a high-ranking public official at all times relevant to the allegations in this case, which augments the case for transparency. *See Sokol*, 2014 WL 5473050, at *1. And the fact that the case settled shortly after the deposition makes it likely that Daley gave testimony that the public deserves to hear.

In contrast, Daley's privacy interests are thus far unarticulated; neither Daley nor the Court discussed them on the public record. The Protective Order was entered prior to his deposition and thus presumably does not relate to the content of his testimony. Instead, given the context, the Court appears to have entered the Protective Order because Daley had suffered a stroke four years prior. Perhaps it was intended to shield him from any embarrassment from the continuing effects of his stroke, which his demeanor might reveal.

Not having seen the video, Hercules cannot definitively address the strength of that interest. But circumstances suggest it cannot outweigh the massive public interest in disclosure. As the Court observed, Daley continued to serve as Of Counsel to Katten, as Executive Director of Tur Partners, and on the Board of Directors of Coca-Cola—positions he presumably could not have held if the stroke continued to be debilitating. *See* Hercules Decl. Ex. 2 at 99:10-13. Plus, Daley was videoed at the Cook County Board on December 3, 2018—a few months after his depositions, which were four years after his stroke—in which he was walking normally and appeared lucid.[2] All this suggests that Daley would not suffer anything close to the level of embarrassment sufficient to justify withholding such important material from the public. He certainly has not met his burden to show otherwise.

       **3.    In the alternative, Hercules has shown good cause to vacate the Protective Order.**

As argued above, Daley has the burden to show continued good cause for the protective order and has not met that burden. But even if the Court concludes that the burden falls on Hercules, it should find that he has met that burden. When the movant has the burden, courts typically consider four factors: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Heraeus*, 881 F.3d at 565. Each factor either favors Hercules or is inapplicable.

---

[2] The video, dated December 3, 2018, was posted on Facebook here: https://www.facebook.com/MaryAnnAhernNBC5/videos/former-mayor-richard-daley-attends-his-brother-johns-swearing-in-at-the-cook-cou/1271010989707611/. It is plainly authentic. The video caption says that Daley was attending his brother John's swearing-in ceremony at the Cook County Board, at which the *Chicago Tribune* reported that Daley made an appearance. *See* Gregory Royal Pratt, New Cook County Board members sworn in Monday, *Chicago Tribune* (Dec. 3, 2018), https://www.chicagotribune.com/2018/12/03/new-cook-county-board-members-sworn-in-monday/.

*Nature of the protective order*. Under the first factor—the nature of the protective order—courts consider both the "scope" of the order and "whether it was court imposed or stipulated to by the parties." *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006) (quoting *Bayer AG & Miles, Inc. v. Barr Lab'ys, Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995). The "scope" typically refers to whether the protective order is an umbrella order (where all discovery is protected), a blanket order (where parties identify protected material), or a targeted order that covers "a specific kind of identified information." *Id*. Umbrella orders are the easiest to modify or vacate; targeted orders are the hardest. *See id*.

The Protective Order does not target "a specific kind of identified information." *Id*. Instead, it applies to **all** information conveyed in Daley's deposition. And while it does not perfectly align with any of *Murata*'s categories, the order is best described as a partial umbrella order: it applies to all information, whether or not designated by a party, but only to certain documents generated in discovery (*i.e.*, Daley's deposition). Because the Protective Order is an umbrella order, this factor favors Hercules.

The parties' stipulation to the Protective Order does not change this result. Because it is important to hold parties to their agreements, a stipulated order is harder to vacate when a consenting party later seeks to no longer be bound. *See Bayer*, 162 F.R.D. at 465. But that rationale does not apply when a non-party seeks to vacate the order, as Hercules does here. *See id*. (holding that, "[o]n a modification motion by a non-party, blanket protective orders—and the parties' designation of documents as protected—may need to be more carefully examined to prevent abuse," but that where "the modification motion is brought by a party who stipulated to a blanket protective order, the party should be held to its agreement and thus should have the burden of showing good cause for its modification request").

*Foreseeability*. The foreseeability factor considers "whether the need for modification of the order was foreseeable at the time the parties negotiated the original stipulated protective order." *Murata*, 234 F.R.D. at 180 (quoting *Bayer*, 162 F.R.D. at 466). It comes into play when a party negotiates a protective order and fails to include provisions that it should have foreseen in advance. *See id*. It is "not informative" when the order's terms were "not negotiated," and thus has no relevance here, since Hercules had no involvement in the Protective Order's entry. *Id*.

*Reliance*. The third factor, reliance, addresses the extent to which the party opposing modification "relied on the protective order in affording access to discovered materials." *Id*. (quoting *Bayer*, 162 F.R.D. at 467). Courts consider reliance to ensure that witnesses relying on protective orders will not "be inhibited from giving essential testimony in civil litigation," and that parties requested to produce documents will limit their objections, thus facilitating orderly litigation. *Bayer*, 162 F.R.D. at 467.

Those considerations do not apply here. While Daley did sit for the deposition believing it would be confidential, there is no indication that the Protective Order would have impacted his testimony—after all, the public record does not suggest it was entered due to what he might say, but rather his demeanor following his stroke. Further, lifting the Protective Order would not negatively impact future litigants in Daley's position, since he was ordered to sit for the deposition and had no choice in the matter. Moreover, reliance interests are diminished when the District Court makes no good cause finding, as here. *See Pansy*, 23 F.3d at 792. Thus, the reliance factor favors vacating the order.

*Good cause*. Last, the "most significant[]" factor is whether there is good cause to lift the order. *Heraeus*, 881 F.3d at 565. This factor requires the court to "weigh that party's need for modification against the other party's need for protection." *Murata*, 234 F.R.D. at 180. These

issues are addressed above: the public's massive interest in seeing the video deposition outweighs any interests Daley might have in concealing it.

When the moving party bears the burden, good cause also includes the existence of "changed circumstances." *Id*. Here, circumstances have changed since the Court entered the Protective Order: the case ended without trial. When the Court entered the order, litigation was in full swing, and it was entirely likely that Daley would have testified at trial. Given the strong presumption of public access to civil trials, the public almost certainly would have heard his testimony. *See Matter of Cont'l Illinois Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (holding presumption of public access applies to civil proceedings); *Huminski v. Corsones*, 396 F.3d 53, 82 n.30 (2d Cir. 2004) (noting that six Supreme Court Justices reached that conclusion in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)). Thus, at the time the Court entered the Protective Order, restricting access to the deposition would have interfered far less with the public interest in accessing Daley's testimony than it does now, when the deposition is the only vehicle to inform the public about the monumentally important issue of police torture and forced confessions, and what the government knew about them.

In short, Daley bears the burden to justify the Protective Order and cannot meet that burden. But if Hercules bore the burden to justify vacating it, he has easily satisfied that burden. Either way, the Court should vacate the Protective Order.

### IV. CONCLUSION

For the foregoing reasons, this Court should vacate the protective order precluding distribution of Daley's video deposition.

- 15 -

        RESPECTFULLY SUBMITTED,

        /s/ *Stephen Stich Match*

        _____

        Attorneys for Intervenor
        BOB HERCULES

Matthew Topic
Stephen Stich Match
Shelley Geiszler
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com

## CERTIFICATE OF SERVICE

I, Stephen Stich Match, an attorney, hereby certify that on December 23, 2024, I caused the foregoing Motion to Vacate Protective Order to be served on all counsel of record via the Court's CM/ECF system.

        */s/ Stephen Stich Match*