THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ALONZO SMITH, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 16 C 03404 |
| v. | ) ) | Chief Judge Virginia M. Kendall |
| JON BURGE, *et al.*, | ) ) ) | |
| *Defendants*. | ) ) ) | |

### MEMORANDUM OPINION AND ORDER

Intervenor Bob Hercules moves to vacate a January 24, 2018 protective order precluding the distribution of Defendant Richard M. Daley's video deposition. (Dkt. 293). For the below reasons, the Court denies Hercules's motion [293].

### BACKGROUND

Plaintiff Alonzo Smith filed this action on March 17, 2016 against the Jon Burge, former Commander of the Chicago Police Department; Richard M. Daley, former Mayor of the City of Chicago and Cook County State's Attorney; and others alleging the Chicago Police Department had a practice of coercing confessions from criminal defendants. (Dkt. 293 at 1; *see generally* Dkt. 1). Throughout the proceedings, G. Flint Taylor and the People's Law Offices represented Smith. (*See* Taylor Dec., Dkt. 293-2 ¶ 4). Smith noticed his intention to take Daley's deposition, prompting Daley's attorneys to file for a protective order to preclude any deposition because Daley would be "unable to provide accurate or reliable answers in response to questions that might be put to him" due to a stroke he suffered in 2014. (Dkt. 293 at 2; Dkt. 284 ¶¶ 4, 7).

Judge St. Eve, who was then presiding over this case, conducted an *in-camera* hearing on the motion for protective order with Plaintiff's and Daley's counsel along with Daley's treating physician and neurologist. (Dkt. 302 at 4). Judge St. Eve eventually denied Daley's request to preclude his deposition, concluding he failed to demonstrate that accommodations would be insufficient to allow a deposition to proceed. (*See* Dkt. 161; Dkt. 302 at 5). Daley filed a renewed motion for protective order after obtaining additional medical reports. (Dkt. 285). At another hearing, and after considering all the medical evidence, the results of Daley's neuropsychological test scores, and Daley's post-stroke professional and social commitments, Judge St. Eve denied the renewed motion, allowing an oral deposition to proceed with certain guardrails. (*See* Jan. 24, 2018 Hr'g Tr., Dkt. 293-1 at 99:10–100:1). Specifically, Judge St. Eve ordered the deposition to take place in shorter chunks of time rather than one standard session and personally agreed to attend the oral deposition "as an observer." (*Id.* at 100:16–18, 102:1–7).

Although Judge St. Eve denied Daley's motion for protective order to preclude the deposition from going forward, she granted a protective order preventing the disclosure of the videotaped deposition. Daley's attorneys lodged a concern that preserving a videotape of the deposition would "serve[] only to embarrass" Daley. (*Id.* at 102:14–20). Judge St. Eve stated on the record:

> [T]his will be under seal. Nothing can happen with that video deposition without further order of the Court. . . . And somebody will be in lots of trouble if there is a leak of that deposition. I do not think that is anybody's intention, though.

(*Id.* 102:21–103:4). Smith's counsel stipulated to the protective order preventing the disclosure of the video and elaborated that they "considered foregoing the video" altogether and only wished to proceed with a video deposition in the event they would need to preserve the testimony for use at a future trial. (*Id.* at 103:5–14). The deposition eventually took place over three sessions between

April and July of 2018. (Dkt. 293 at 3). After the deposition sessions concluded, and considering the "complicated nature" of discovery into Daley's knowledge of the underlying facts, Judge St. Eve granted Smith's request to issue supplemental requests to admit. (Dkt. 218).

On November 6, 2018, approximately four months after Daley's final deposition session, the parties notified the Court that they had reached a settlement. (Dkt. 235). The case was terminated later that month. (Dkt. 248). Three years later, Hercules moved to intervene and unseal certain docket entries related to Daley's attempt to preclude his deposition. (Dkt. 293 at 4; *see generally* Dkt. 256). The case was reassigned to Judge Dow on August 25, 2021. (Dkt. 257). Over the next two years, Judge Dow devoted considerable time and resources to Hercules's motion. On March 6, 2023, Judge Dow granted the motion in part and, having personally redacted portions of motions, responses, and exhibits, ordered the parties to file updated versions on the docket reflecting his omissions of information that implicated Daley's "legitimate privacy interests in regard to his medical circumstances and associated medical records." (Dkts. 278–279). All redacted versions of the relevant documents were filed on the docket by the end of September 2023. (*See* Dkts. 284–288). Hercules filed the instant motion to vacate the protective order prohibiting the disclosure of Daley's videotaped deposition on December 23, 2024 and the case was promptly reassigned to this Court. (Dkts. 293–294).

## DISCUSSION

### I. Standing

Before he can challenge the protective order, Hercules must demonstrate that he has standing. *In re Helmstetter*, 44 F.4th 676, 679 (7th Cir. 2022) ("The party invoking federal jurisdiction bears the burden of establishing standing."). Hercules must show that he has suffered an "injury-in-fact capable of being redressed by a favorable decision of the court." *Bond v.*

3

*Ultreras*, 585 F.3d 1061, 1072–73 (7th Cir. 2009). A legally cognizable injury-in-fact involves "an invasion of a legally protected interest" that is concrete and particularized, not speculative or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Daley contends that Hercules cannot satisfy the injury-in-fact prong because he has no legally protected interest or right to the deposition video. (Dkt. 303 at 10). It is true that the public has no general right of access to pretrial discovery materials, including deposition tapes and transcripts. *Bond*, 585 F.3d at 1074–75; *see also Seattle Times v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."). Hercules is thus in a fundamentally different position now that he attempts to access "discovery materials that have never been filed with the court and have never influenced the outcome of a judicial proceeding" compared to his earlier efforts to unseal motions, responses, and exhibits, which were undoubtedly part of the public record, but filed under seal. *Bond*, 585 F.3d at 1073–74; *see Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) ("Those who seek access to sealed material have a right to be heard in a manner that gives full protection to the asserted right." (citation modified)). But Hercules does not contend that he has standing based on the public's right of access to court records. (Dkt. 311 at 3). Instead, he argues he has standing to challenge the protective order based on a First Amendment right to receive information.

Stipulated protective orders implicate a narrow First Amendment right. While the public does not have a *right* to unfiled discovery information, "[a]bsent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). So, when a protective order prevents the dissemination of this information, it implicates the "free expression rights" of those who are

4

bound to it. *Bond*, 585 F.3d at 1077. Further, it is not only the person who wishes to speak whose rights are at issue, but also the intended recipient's right to listen and receive information. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("Freedom of speech presupposes a willing speaker. But where a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both."). It is against this backdrop that Hercules claims to have standing based on his constitutional right to receive information.

In the context of protective orders governing unfiled discovery materials, intervenors must point to a particular willing speaker who, absent the restraint, would provide the intervenor with the information he seeks. For example, the intervenor in *Bond* sought to vacate a stipulated protective order prohibiting the dissemination of unfiled discovery material. *See Bond*, 585 F.3d at 1077. One of the parties in the underlying case "strongly objected to his challenge to the protective order." *Id.* at 1066. The other party did not voice any opposition or support. *Id.* at 1067. Accordingly, the Court found the intervenor lacked standing because he failed to show that there was any party or individual who would be willing to send him the information he sought even if the Court dissolved the protective order. *Id.* at 1078. The result in *Bond* is consistent with decisions of other courts of appeal that have distilled the willing speaker analysis into a simple inquiry: "whether third parties would obtain the information they seek if successful on the merits of their claims." *United States v. Wecht*, 484 F.3d 194, 204 (3d Cir. 2007); *see also Okla. Hosp. Ass'n v. Okla. Publ'g Co.*, 748 F.2d 1421, 1425 (10th Cir. 1984) (denying standing to third party that failed to establish it would "obtain[] the redress it s[ought]—access to the documents—were [the court] to lift the protective orders").

In this case, Hercules has identified a willing speaker, G. Flint Taylor. Taylor, who is subject to the protective order: (1) possesses a copy of Daley's unfiled video deposition; (2) wishes

5

to distribute a copy of that video to Hercules; (3) supports Hercules's motion to vacate the protective order; and (4) plans to send Hercules a copy of the video if the Court vacates the protective order. (Taylor Dec., Dkt. 293-2 ¶¶ 5–8). Unlike the intervenor in *Bond* or the third-party in *Oklahoma Publishing*, Hercules has met his burden in establishing that but-for the protective order, a willing speaker would exercise his free speech right to disseminate Daley's deposition. With Taylor as his willing speaker, Hercules has identified an injury-in-fact to his constitutional right to receive information that will be redressed if the Court determines it is appropriate to vacate the protective order. Accordingly, Hercules has standing.

## II.  Good Cause to Vacate the Protective Order

Next, the Court turns to whether it is appropriate to vacate the protective order preventing the dissemination for Daley's deposition. Traditionally, the party seeking to modify or vacate an existing protective order has the burden of showing good cause. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018); *see also Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006) ("It should be no surprise that, there having been good cause to enter the protective order in the first place, there must be good cause shown before it can be vacated."). The Court considers four factors in determining whether to modify or vacate a protective order: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Heraeus Kulzer*, 881 F.R.D. at 565 (quoting *Chi. Mercantile Exch., Inc. v. Tech. Rsch. Grp., LLC*, 276 F.R.D. 237, 239 (N.D. Ill. 2011)).

Hercules resists the application of the four-factor test altogether and attempts to place the burden on Daley to demonstrate why good cause remains to keep the protective order in place. (Dkt. 293 at 7–8). First, he notes that the court in *Heraeus Kulzer* recognized it is sometimes

6

appropriate to shift the burden of proving good cause to the party who wishes to keep information under seal. *Id.* at 566. But that discussion was limited to situations where a third party seeks access to court files and other documents that make up the public record. *Id.*; *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002) (noting a "strong presumption of public disclosure applies *only* to the materials that formed the basis of the parties' dispute and the district court's resolution." (emphasis added)). There is no such presumption of public disclosure for unfiled discovery. Indeed, "[t]he public has *no right* to access these documents, which cannot conceivably aid the understanding of judicial decisionmaking." *City of Greenville, Ill. v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 698 (7th Cir. 2014) (emphasis added). Contrary to Hercules's assertion, *Heraeus Kulzer* does not support placing the burden on Daley.

Nor does Daley inherit the burden based on the circumstances under which the protective order was issued. Hercules's attempt to cast Judge St. Eve's initial protective order as unsupported by good cause is misguided. (Dkt. 293 at 9). The record establishes that she undertook a thorough review of the parties briefing, Daley's personal medical information, and the public record in concluding that the deposition videotape would "be under seal." (Jan. 24, 2018 Hr'g Tr., Dkt. 293-1 at 102:21–23). Indeed, she articulated the good cause standard in finding the deposition could proceed, supporting the conclusion that it was with that standard in mind she issued the agreed protective order preventing disclosure of the videotape. (*Id.* at 98:18–100:1); *see Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 178 (N.D. Ill. 2006) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) and recognizing that a court's decision to enter a protective order "presumes that . . . there was good cause"). Finally, Judge Dow's equally thorough review of the record is in accord with Judge St. Eve's good cause finding. (*See* Dkt. 279). Based on the

7

above, Hercules bears the burden of establishing good cause exists to vacate the protective order. The Court considers each of the four factors relevant to that determination below.

### A. Nature of the Protective Order

The nature of the protective order concerns the order's "scope and whether it was court imposed or stipulated to by the parties." *Murata*, 234 F.R.D. at 179 (quoting *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995)). Smith's attorneys stipulated to entry of the protective order. Thus, this case does not present a unilateral government restraint but instead involves "self-imposed secrecy," which weighs against vacating the order. *Bond*, 585 F.3d at 1077. It is of no moment that Hercules is the person seeking to vacate the protective order, not one of the parties, because his entire argument depends on G. Flint Taylor, who originally consented to the order, wishing to disseminate the videotape. *Cf. Bayer AG*, 162 F.R.D. at 465 ("Where . . . the modification motion is brought by a party who stipulated to a blanket protective order, the party should be held to its agreement[.]").

In terms of scope, protective orders can ordinarily be broken into three categories: umbrella orders, blanket orders, and specific orders. An umbrella order "generally designates that all discovery is protected, without any review or determination of good cause." *Murata*, 234 F.R.D. at 179. It is also the easiest to modify. *Id.* Next, are blanket orders, which allow parties to protect "selected documents that they believe in good faith contain . . . confidential information." *Id.* Blanket orders to which the parties have stipulated are "more difficult to modify or vacate." *Id.* Finally, and most difficult to modify, are protective orders that are narrowly tailored to protect only a "specific kind of identified information." *Id.*

Despite Hercules's attempt to cast the instant protective order as a "partial umbrella order," it more neatly falls in one of the last two categories. (Dkt. 293 at 12). While the Court agrees that

it is hard to classify the order as specific because it does not target a class of information, it is also certainly not an umbrella order because the singular thing the protective order covers is a videotape. *See Bayer*, 162 F.R.D. at 465 (classifying protective order covering only one audiotape as specific); (Dkt. 293 at 12). Accordingly, the scope of this order falls somewhere in the middle, akin to a blanket order. And because the parties stipulated to entry of the order, this factor weighs against Hercules's requested modification. *See Bayer*, 162 F.R.D. 466.

### B. Foreseeability of Requested Modification

The foreseeability factor is not relevant here. It is often defined as questioning whether the parties who negotiated the original stipulated order could have foreseen the requested modification. *Murata*, 234 F.R.D. at 180. But the parties did not negotiate the terms of this protective order. Nor is it a party seeking to modify the protective order but an intervenor who was not involved in this case at the time Judge St. Eve entered the order.

### C. Parties' Reliance on the Order

Next, the Court looks to whether the party resisting modification of the protective order "relied on the protective order in affording access to discovered materials." *Id.* (quoting *Bayer*, 162 F.R.D. at 467). Hercules is technically correct that Daley "was ordered to sit for the deposition and had no choice in the matter" of whether to afford access to the discovered materials, i.e., his testimony. (Dkt. 293 at 13). In this way, Daley's reliance interest, like foreseeability, appears to be a wash because he cannot be said to have banked on the order in agreeing to sit for the deposition.

Daley's reliance interests deserve a closer examination, however, especially considering the specific information Hercules seeks. Hercules's motion concerns only the dissemination of Daley's videotaped deposition. At the hearing when the protective order was entered, Daley's

9

counsel perhaps anticipated the video's public release and voiced concern about videotaping in the first place because "preserving that [video] serves only really to embarrass [Daley]." (Jan. 24, 2018 Hr'g Tr., Dkt. 293-1 at 102:14–18). Smith's counsel responded that the "only reason why" they decided not to "forego[] the video" altogether was to preserve Daley's testimony for a potential trial. (*Id.* at 103:5–14). Without this assurance from Smith's counsel (on which it now backtracks, (Taylor Dec., Dkt. 293-2 ¶¶ 6–8)), it is certainly possible that Daley would have more forcefully resisted the deposition being videotaped. In that way, he did rely on the protective order, and Smith's counsel's representations, in "affording access to discovered materials," specifically, the videotape—irrespective of its contents. *Murata*, 234 F.R.D. at 180. Obviously, no trial came to pass, and Daley has continued to rely on the protective order to prevent the public disclosure of his video deposition for more than seven years. As a general matter, the parties' "longstanding reliance" on a protective order still weighs against modification as a matter of fairness and finality. *Heraeus Kulzer*, 881 F.3d at 568. Here, that is undoubtedly the case. In sum, this factor weighs against Hercules's request to vacate the protective order.

### D.  Good Cause

Finally, and most importantly, whether Hercules has met his burden in establishing good cause to vacate the protective order depends on three things: 1) whether circumstances have fundamentally changed since Judge St. Eve entered the protective order in the first place; 2) the public's interest in seeing Daley's deposition; and 3) Daley's interest in keeping the information private. Where, as here, the moving party seeking to modify or vacate a protective order bears the burden of establishing good cause, the court looks for "changed circumstances or new situations; a continuing objection to the terms of a protective order does not constitute good cause to modify or withdraw it." *Kyles v. J.K. Guardian Sec. Servs.*, 2006 WL 2349238, at *4 (N.D. Ill. Aug. 15,

2006); *Heffernan v. City of Chicago*, 286 F.R.D. 332, 335 (N.D. Ill. 2012); *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2011 WL 148252, at *2 (N.D. Ill. Jan. 18, 2011). Further, in considering good cause, "the court must weigh [the moving] party's need for modification against the other party's need for protection." *Murata*, 234 F.R.D. at 180.

Hercules's arguments on changed circumstances and public interest are intertwined. In summary, he asserts the public has a "massive interest in seeing the video deposition" because it may shed light on what the Cook County State's Attorney's Office and City of Chicago knew about "police torture and false confessions" within the Chicago Police Department. (Dkt. 293 at 10, 14). And he further contends that circumstances have changed since the order was entered in that the case ended without a trial. (Dkt. 293 at 14) As Hercules sees it, this has resulted in the public being deprived of an opportunity to hear Daley's live testimony, rendering the video deposition the "only vehicle to inform the public" about the underlying issues. (*Id.*)

The public of course has an interest in hearing what Daley might have to say about allegations of police torture and forced confessions. *See Wiggins v. Burge*, 173 F.R.D. 226, 230 (N.D. Ill. 1997) (recognizing the public's interest in knowing how allegations of police torture are investigated and resolved). And that interest is slightly elevated considering Daley, "the party benefitting from the confidentiality order[, was] a public official." *Sokol v. City of Chicago*, 2014 WL 5473050, at *1 (N.D. Ill. Oct. 29, 2014) (St. Eve, J.). But these considerations were as true on the day the protective order was entered as they are today. Hercules's argument that circumstances have changed because this case did not go to trial misses the mark because it conflates the public's interest in accessing live trial testimony and the public's interest in accessing unfiled discovery materials. Hercules's move here is not new. Indeed, the Seventh Circuit has recognized the "[t]ension between secrecy of discovery and disclosure of the record is inevitable; parties are

tempted to use the latter to undermine the former." *Syngenta*, 764 F.3d at 697. "To resolve this tension," the court has "limited the presumption of public access to materials that affect judicial decisions." *Id.* Thus, while the Court recognizes the public interest in seeing the Daley's deposition testimony, Hercules has failed to demonstrate a legally significant change in circumstances that justifies vacating the protective order. Moreover, the public's interest remains significantly augmented by the fact that Daley's deposition is not public material. The Court's "continued control" over it "does not raise the same specter of government censorship that such control might suggest in other situations." *Seattle Times*, 467 U.S. at 32; *see also Wrice v. Burge*, 2016 WL 6962838, at *9 (N.D. Ill. Nov. 29, 2016) (discussing the non-public nature of discovery materials in the context of a good cause analysis).

Hercules also suggests good cause exists to vacate the protective order because the order "interfere[s] with disclosure under state freedom of information laws." (Dkt. 293 at 10). Hercules attempted to obtain the video deposition from the City of Chicago Law Department under the Illinois Freedom of Information Act (FOIA), 5 Ill. Comp. Stat. Ann. 140. The Law Department denied Hercules's request based on the protective order. (*See* Ex. 3, Dkt. 293-1 at 20). But the Illinois FOIA does not apply for at least two reasons. First, the statute only applies to materials that have been "prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 Ill. Comp. Stat. Ann. 140/2(c). "[P]ublic body" meaning only "bodies of the state." *Id.* § 2(a). Here, the protective order limited access to the videotape to Daley, Daley's counsel, Smith, and Smith's counsel. There is no reason to believe the video is in the possession or control of any state body. Hercules's Illinois FOIA denial letter does not establish anything to the contrary. Second, as discussed at length in this Memorandum Opinion, the video deposition is decidedly not a matter of public record under controlling Supreme Court

12

precedent. *Seattle Times*, 467 U.S. at 33 (recognizing "discovered, but not yet admitted, information" is not "a traditionally public source of information"). Accordingly, Hercules's attempts to access Daley's videotaped deposition under the Illinois FOIA do not increase the public's right to access the underlying information, which remains unfiled discovery material.

The above considerations are alone sufficient to deny Hercules's motion. Still, without delving into the contents of Daley's testimony, the Court also notes that, on the other side of the ledger, Daley's continued interest in keeping his sensitive health information private weighs against public dissemination of the video. The Court ordered Taylor to produce a copy of the video for the Court's *in camera* review in connection with this motion. (Dkt. 319). The Court has reviewed certain portions of the deposition video and concludes that, irrespective of Daley's substantive answers, the recording could have the tendency to reveal sensitive aspects of his medical condition and symptoms following his 2014 stroke.[1] Moreover, Judge St. Eve's and Judge Dow's careful rulings in this case demonstrate that Daley's health conditions have remained the "driving force" behind the protective orders and determinations as to Daley's testimony. (Dkt. 279). Accordingly, Daley's continued "need for protection" still weighs heavily on the side of keeping the protective order in place.

In sum, Hercules has failed to demonstrate good cause exists to vacate the protective order and both the nature of the order and Daley's reliance on it support keeping the order in place. The Court denies Hercules's motion. (Dkt. 293).

### III.  Sealing and Redactions

Finally, the Court briefly considers the parties positions on the extent to which their briefing on this motion should remain sealed or redacted. Unlike Daley's deposition, these briefs

---

[1] The public does not acquire a right of access to the otherwise unfiled deposition video based on the Court's limited *in camera* review. *Bond*, 585 F.3d at 1075 n.8 (collecting cases).

are without question part of the public record. *See In re Krynicki*, 983 F.2d 74, 75–76 (7th Cir. 1992). The Court agrees that only the portions of the briefs that implicate Daley's sensitive health information and other factual material that Judge Dow determined will remain under seal may be redacted from the publicly accessible versions of the briefs. (*See* Dkt. 279; Dkt. 311 at 13). Hercules's first sealed reply [311] may be refiled on the public docket without any redactions. The Court has made what it deems appropriate redactions to Daley's sealed response brief in opposition to Hercules's Motion to Vacate [303] and Hercules's second sealed reply [315]. These redactions are consistent with Judge Dow's prior orders, corresponding redactions, and decisions to keep some documents and exhibits under seal. (*See* Dkts. 279, 284–286, 289). They further account for this Memorandum Opinion and the decision to keep the protective order in place. The Court's redactions are indicated directly on the documents in red pen and will be transmitted to the Courtroom Deputy. The Courtroom Deputy will send the redacted documents to the parties and the parties shall resubmit them with the redactions professionally made within 7 days.

## CONCLUSION

For the above reasons, the Court denies Intervenor Bob Hercules's Motion to Vacate Protective Order [293]. Hercules is directed to refile his second sealed reply [315] and Daley is directed to refile his response [303] with the Court-ordered redactions within seven days of this Order.

*Virginia M. Kendall*
Virginia M. Kendall
United States District Judge

Date: September 24, 2025

14